# Belmont Coal and Railroad Company v. Smith.

*Action on Promissory Note, by Payee against Maker.*

1. *Error without injury, in admission of evidence.*—The admission of evidence which is at the time *prima facie* inadmissible, is error without injury, when the record shows that its relevancy or admissibility was established by evidence subsequently introduced.

2. *Declarations of agent; when admissible against principal.*—The admissions or declarations of an agent, relating to the business of the agency, and made while negotiating in reference to it, are admissible as evidence against his principal.

3. *Thanksgiving day as public holiday.*—Thanksgiving day, though declared a holiday for commercial purposes (Sess. Acts 1882-3, p. 188), is not thereby made *dies non juridicus,* nor is the transaction of judicial business on that day interdicted.

4. *Promissory note for rent; stipulation by payee to save maker harmless against claim of third person.*—Where a promissory note, given for the payment of rent, recites that the payee "agrees to save harmless" the makers against the claim of W., from whom they had also rented the premises, and to whom they had executed a note; if the makers voluntarily pay the claim of W., they can not make the payment available as a defense against the note, without proving affirmatively that defense against it would have been unavailing.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. H. C. SPEAKE.

This action was brought by Barton B. Smith, against the
VOL. LXXIV.

[Belmont Coal and Railroad Co. v. Smith.]

appellant, a domestic corporation; was commenced on the 6th February, 1882, and was founded upon a promissory note, dated January 3d, 1881, of which the following is a copy:

"Thirty days from date, we promise to pay B. B. Smith one hundred dollars, as rent of store at Boyd's Switch, for the year 1880; said B. B. Smith agreeing to hold us harmless against claim of James K. Wright.

"BELMONT COAL & R. R. Co.
W. S. GORDON, Vice-president."

The complaint contained two counts; the first on the writing as an ordinary promissory note, and the second setting it out in full, and averring that plaintiff "has at all times, since the execution of said note, been ready and able, and is now ready, able and willing, to hold the said maker harmless against the claim of said James K. Wright." The defendant corporation pleaded payment, want of consideration, failure of consideration, accord and satisfaction, set-off, and a special plea in these words: "For further answer to the complaint, defendant says that, at and before the execution of the writing sued on, defendant had rented said premises and building for the same year for which said instrument was executed to plaintiff, and had executed to said J. K. Wright, their landlord, their promise in writing for the sum of one hundred dollars, the rental of said building for the year covered by said instrument sued on; that said plaintiff, in said instrument sued on, obligated himself to indemnify and hold defendant harmless against the claim of said Wright on said rental contract, and, as one of the means of indemnifying defendant, delivered to said defendant a bond of said Wright, dated December 11th, 1878, and payable at one day, in the sum of $228.19, on which was then entered a credit of $100, January 24th, 1879, paid to said plaintiff; and plaintiff assured defendant that said promissory note, or bond, was founded upon a valuable consideration, and that the amount due thereon was the sum aforesaid, and that there was no set-off nor defense valid to the same, and that said maker was solvent therefor, and would accept the same in satisfaction, *pro tanto*, of the said sum due to him from defendant. Defendant relied upon said representations of plaintiff, and had the right to rely on the same; presented said bond to said Wright for payment, or as a set-off to the amount thereof of the debt defendant owed said Wright; and said Wright refused to accept the same as a set-off or payment *pro tanto*, and demanded of defendant, as his landlord, payment of said stipulated sum as rent, and declared his intention to avail himself of defenses to said bond, and, if a recovery was effected thereon, to avail himself of the exemption laws of Alabama; and said Wright had not other property sufficient to respond to said debt, exempt from levy

and sale; and defendant thereupon paid said note to said Wright, before the institution of this suit. Plaintiff had notice of these facts, or the means of notice. Defendant desired and requested plaintiff to relieve defendant of the contract entered into with plaintiff, and offered to surrender said bond, and to place plaintiff in *statu quo;* but plaintiff declined to accept said note and rescind. Defendant here now tenders said bond to plaintiff, and claims a rescission of said contract, or an abatement on the note sued on, and by reason of said failure of consideration, and misrepresentation in the material matters aforesaid, claims a credit on the instrument sued on, to the extent of said bond." There was a demurrer to this special plea, which the court overruled, and the cause was tried on issue joined on all the pleas.

On the trial, as the bill of exceptions shows, the note on which the suit was founded having been read in evidence, the plaintiff himself testified, as a witness in his own behalf, that said note was executed by W. S. Gordon, "who was at the time vice-president of said defendant corporation," and was given for the rent of a store at "Boyd's Switch" for the year 1880; that the store was on land which belonged to the estate of his deceased brother, whose executor he was, and was built by said James K. Wright, under a contract with him, by which it was agreed that Wright should have a lease of the property for three years; that Wright accordingly occupied it for several years, and rented it for the year 1879 to one Isbell, who sub-let it to the defendant: "that while defendant was so in possession, witness notified them that he was entitled to the possession on the 1st January, 1880, and defendant must rent from him; that witness had a contention with said Wright, in 1879, as to who was entitled to receive the rent of said store, plaintiff insisting that his lease to Wright expired at the end of three years, and Wright contending that he was entitled to a lease of the premises for six years; that witness, however, in consideration of the fact that he held said Wright's bond for $228.19, in which was included $50 or $60 for lumber which he had bought of witness, and had used in the erection of said building, consented to give said Wright the benefit of the use of the house for 1879, said Wright transferring to him Isbell's note for $100, which was credited on said bond; that he was always entirely ready to hold the defendant harmless against the claim of said Wright, and to that end, when defendant's note was executed to him, he delivered to defendant said Wright's bond for $228.19. Witness then testified, that he was acquainted with one James Barclay, who was a clerk in the defendant's store; and he was then asked this question: "If, in 1879, said Barclay, as such clerk, had an interview with you, with refer-

[Belmont Coal and Railroad Co. v. Smith.]

ence to defendant's renting said store for the year 1880, what did said Barclay say on that occasion?' To this question the defendant objected, because it was not shown that said Barclay was the authorized agent of the defendant to hold said interview; and because defendant could not be bound by the unauthorized statements of said Barclay; and because the evidence sought to be elicited was hearsay, irrelevant, and illegal." The court overruled said objections, and the defendant excepted. "Witness replied, that said Barclay, in 1879, in company with said Wright, did have an interview with him; that Barclay said, in that interview, that he wished to rent said store for the year 1880, for the defendant, from whoever was authorized to rent the same; that he (witness) thereupon consented to allow Wright to appear to be the owner of said property, and the same was rented by said Wright to the defendant for the year 1880; and that he agreed to this arrangement upon the assurance of said Wright that he would obtain a waiver note of W. S. Gordon as vice-president of the defendant corporation, and would turn over said note to him."

J. P. Harris, a witness for plaintiff, testified, "that he was plaintiff's clerk in 1881, and was sent by plaintiff to demand rent of the store for the year 1880, of the defendant, from W. S. Gordon, the vice-president, and to notify defendant not to pay rent for said year to said Wright; and said witness was then asked this question: 'In the course of your interview with said Gordon, did he say anything about the conflicting claims of persons to whom the rent was due?' The defendant objected to this question, because it was illegal, irrelevant, and inadmissible; the court overruled the objection, and the defendant excepted. The witness replied, that Gordon answered, 'Yes—he thought plaintiff was entitled to receive the rent, and he would rather pay it to him; but that Wright had a claim to said rent, and he did not see how defendant could be bound to pay the rent to plaintiff also.'"

Barclay was afterwards introduced as a witness by the defendant, and "testified that, in December, 1879, plaintiff having notified defendant not to rent from Wright, as he (plaintiff) was the only rightful landlord, witness was sent by W. S. Gordon, vice-president of the defendant corporation, to ascertain who was the rightful person to rent said premises, and, finding that Wright asserted rival claims thereto, carried said Wright with him to have an interview with plaintiff; that plaintiff and said Wright, after a short consultation, retired to a back room, and returned after a conference together, when plaintiff said he would give way to Wright, and would allow him to rent the store to defendant for the year 1880, but that said Wright must take a waiver note, and turn it over to him; that said Wright

14

thereupon furnished witness a blank waiver note, which witness carried to said Gordon, vice-president of said defendant corporation, and told Gordon what plaintiff and Wright had agreed on; and that thereupon said Gordon, vice-president of said corporation, executed said waiver note to Wright, and sent it to him by mail." Wright was also examined as a witness for the defendant, and testified as to the terms of the contract under which he built the house, claiming that he was to have a lease for six years, and as to the agreement between them at the interview mentioned by Barclay; admitting that, by the terms of that agreement, he was to turn over Gordon's waiver note to the plaintiff, but alleging that plaintiff was to give him a written lease according to the stipulations of their original contract; and that he had never delivered the waiver note to plaintiff, because plaintiff had never executed to him such written lease. He further stated, that when he presented his rent note for payment, "witness was shown his said bond which plaintiff had transferred to defendant, and thereupon declared that he would not recognize or pay said bond—that he had valid defenses against it, and it was without consideration, and, if he were sued on it, he would avail himself of the exemption laws; and thereupon said note was paid to witness by said defendant." He testified, also, that he was insolvent at the time these transactions took place.

The court gave the following charges to the jury, on the request of the plaintiff: 1. "It was the duty of the defendant to give the plaintiff an opportunity to hold said defendant harmless against the claim of Wright; and if the defendant voluntarily paid Wright, without notice to the plaintiff, then the defendant can not be heard to say that the plaintiff did not hold it harmless against the claim of said Wright." 2. "The introduction of the note in evidence, together with testimony that plaintiff has been at all times ready and willing to hold defendant harmless against the claim of Wright, makes out a *prima facie* case for plaintiff, and the burden of proof is then shifted to the defendant." The defendant excepted to each of these charges, and then requested the following charges, which were in writing: 1. "If the jury believe from the evidence, that one of the express stipulations of the note sued on was that plaintiff would hold the defendant harmless against the claim of Wright; then, if the jury find from the evidence that said Wright was unable to pay the said obligation for $228.19, credited with $100, by reason of insolvency, suit against said Wright was not necessary on the part of the defendant, and the plaintiff is bound to his agreement to hold defendant harmless against the claim of Wright." 2. "The law defines what is the effect of a guaranty. The contract here made by plaintiff, that he

[Belmont Coal and Railroad Co. v. Smith.]

would hold defendant harmless against the claim of Wright, is an absolute guaranty on the part of plaintiff that defendant should not suffer harm or loss on account of said note held by Wright; and if defendant did suffer harm or loss on account of said note held by Wright, then the consideration of the note sued on would fail. This, the court instructs the jury, is the legal construction of said written instrument; and unless the jury find, from the evidence, that the defendant did not suffer harm or loss from the note given to Wright, they are bound to return a verdict for the defendant." 3. "If the jury find that Wright was insolvent, and could have claimed the exemptions on the said bond for $228.19, then it was not in defendant's power to have enforced the said note or bond as a set-off against their note to said Wright, on such a plea pleaded by Wright to said note; and if they find that said note was dated in December, 1878, then Wright, under the constitution and laws of Alabama, had the right to claim such exemption." The court refused each of these charges, and the defendant duly excepted to their refusal.

The bill of exceptions recites, that the trial of the cause was commenced on Wednesday, 28th November, 1882, and continued until the regular hour for adjournment; that the court then "directed the sheriff to adjourn the court until the regular hour for meeting on the next day, and declined to adjourn over for that day because it was Thanksgiving day by proclamation of the President of the United States, which was admitted;" that the court convened as usual on Thursday morning, and resumed the trial of the cause, which was continued until the court adjourned; and that the trial was finished, and the verdict and judgment were rendered, on Saturday, November 30th. The bill of exceptions does not show that any objection was made, or any exceptions reserved by the defendant, to the action of the court in meeting on Thursday; but it is now assigned as error, that Thursday was *dies non juridicus*, and that the verdict and judgment each is void because of said action of the court. The rulings of the court on the evidence, the charges given, and the refusal of the several charges asked by the defendant, are also assigned as error.

HUMES, GORDON & SHEFFEY, and ROBINSON & BROWN, for appellant.—(1.) Thanksgiving day is a legal holiday, and is not a judicial day.—Sess. Acts 1882–3, p. 188. While ministerial acts may be performed on such day, judicial acts can not be.—3 Chitty's Practice, 106–7; *Lindo v. Musworth*, 2 Camp. 602; *Gladwin v. Lewis*, 6 Conn. 49, or 16 Amer. Dec. 33; *Reid v. The State*, 53 Ala. 402; *Nabors v. The State*, 6 Ala. 200. (2.) The construction of the writing declared on was a

[Belmont Coal and Railroad Co. v. Smith.]

matter for the court, and it was the duty of the court to declare the legal effect of said' writing.—*Collins v. Whigham*, 58 Ala. 438; *Bernstein v. Humes*, 60 Ala. 582; *Shook v. Blount*, 67 Ala. 301; *Goddard v. Foster*, 17 Wallace, 124. (3.) The legal effect of said writing was properly declared in the charges requested and refused.—*Donley v. Camp*, 22 Ala. 659; *Walker v. Forbes*, 31 Ala. 9; *Townsend v. Cowles*, 31 Ala. 428; *Nesbit v. Bradford*, 6 Ala. 746; *Cahuzac. v. Samini*, 29 Ala. 288; Brandt on Suretyship and Guaranty, §§ 41, 53, 88–9; *Colgin v. Henley*, 6 Leigh, Va. 86.

W. L. MARTIN, *contra.*—(1.) If the evidence objected to was not competent when admitted, its competency was shown by the evidence subsequently introduced.—1 Brick. Dig. 809, §'86. (2.) Thanksgiving day is made a legal holiday for certain commercial purposes, but secular business on that day is not interdicted.—*Dunlap v. The State*, 9 Texas App. 179, or 35 Amer. Rep. 736; *Richardson v. Goddard*, 23 How. 28. (3.) The writing sued on was properly construed by the court. Whether construed by its own terms alone, or in the light of the attendant circumstances shown by the evidence, the plaintiff could not be held responsible for the defendant's voluntary payment to Wright, made without suit, and without notice to plaintiff.

STONE, J.—The original contract of renting for the year 1880 was made while Gordon was vice-president of the corporation, and Barclay was clerk in the store—used, as we infer, for purposes of the corporation. There was exception to the allowance in evidence of declarations by, and negotiations with both Barclay and Gordon, which were offered and admitted against the objection of the corporation. The declarations and negotiations all related to the contract of renting, and to the rival claims to the rent, asserted by Smith and Wright. The corporation desired the use of the store-house, and Smith and Wright were each willing it should have it. The contention was, whether Smith or Wright should receive the rent.

We consider it unnecessary to decide whether this evidence, at the time it was offered, had been shown to be admissible. Probably it had not.—1 Brick. Dig. 63, §§ 159 *et seq.* Before the testimony was closed, it was shown that Gordon was superintending the business of the corporation, and that Barclay had been authorized by him to negotiate, and obtain a lease of the store. His declarations related directly to the business entrusted to him, and were made pending, and in reference to the negotiation. This clearly legalized the evidence.—1 Brick. Dig. 809, § 86.

[Goodlett v. Kelly.]

There is nothing in the argument that Thanksgiving day is *dies non juridicus.* It was made a legal holiday for commercial purposes.—Sess. Acts, 1882–3, p. 188. This does not interdict worldly labor or secular pursuits on that day.

The remaining questions arise on the charges given and refused, and these present for our consideration the interpretation of the guaranty embodied in the note sued on. It is contended for appellant the guaranty is an original, independent obligation, casting on the coal and railroad company no duty whatever, in reference to the defense of Wright's claim. We do not so interpret the language employed. It resembles a covenant of good title in a deed of conveyance. The grantee in such deed can not yield voluntarily to an adversary claim, without taking upon himself the duty and burden of showing that such adversary claim is paramount to that of his grantor. In the present case, it was clearly contemplated that there should be a trial and test of the validity of the set-off transferred by Smith to the coal and railroad company. Smith had the unquestioned right to have this question tried, unless it is affirmatively shown the defense would have been unavailing. Brandt on Sur. and Guar. §§ 84–6. If, by the terms of the contract, the ownership of Wright's bond passed to the corporation (it is not shown it did not), then the fact that Wright claimed the rent-money as exempt to him under the statute, would have been no answer to the plea of set-off. The rule is different, when one judgment is sought to be set off against another.— Thompson on Homestead, §§ 892 *et seq.*

The charges given are in harmony with these views, while those refused are not.

This is apparently a hardship on the corporation, but it was brought on it by the terms of its own contract, and by its voluntary payment of the Wright claim.

Affirmed.