(81 South. 246)

SOVEREIGN CAMP OF WOODMEN OF THE WORLD v. MARSHALL.
(4 Div. 558.)

(Court of Appeals of Alabama. Dec. 17, 1918. On Rehearing, Jan. 14, 1919.)

1. EVIDENCE ⬅➡320 — TESTIMONY FOUNDED ON HEARSAY.

Where testimony as to date of payment of assessment by insured itself showed that the witness had ascertained the information testified to from the official notice of insured's death and the statement of insurer's officers included in the proof of death, the testimony was properly excluded, being hearsay.

2. EVIDENCE ⬅➡244(5)—ADMISSION AGAINST INTEREST—ACTION ON BENEFIT CERTIFICATE —PROOF OF DEATH.

In action on benefit certificate involving question of whether insured had forfeited membership, the proof of death prepared by insurer's officers, acting within the scope of their authority, and reciting that insured was a member in good standing at the time of his death, was admissible upon the question of whether insured was a member in good standing, being an admission against interest.

. On Rehearing.

3. EVIDENCE ⬅➡265(2)—ADMISSIONS—FRATERNAL INSURANCE—PRIMA FACIE EVIDENCE— MEMBERSHIP IN GOOD STANDING.

Proof of death prepared by insurer's officers, acting within the scope of their authority and reciting that insured, at time of death, was a member in good standing, was prima facie evidence that insured at time of his death was a member in good standing, notwithstanding Acts 1911, p. 700, §§ 8, 20.

Appeal from Circuit Court, Pike County; A. B. Foster, Judge.

Action by W. S. Marshall against the Sovereign Camp of the Woodmen of the World. From judgment for plaintiff, defendant appeals. Affirmed.

T. L. Borom, of Troy, for appellant.
W. L. & R. S. Parks, of Andalusia, for appellee.

BROWN, P. J. The appellant's contention in this case is that the insured has forfeited his membership in the society by a failure to pay the assessment due from him for the month of December, 1916, on or before the 1st of January, 1917, predicating this contention on the provisions of section 109 of the constitution and by-laws of the Sovereign Camp, which provides:

"Every member of this society shall pay to the clerk of his camp one annual assessment, or one monthly installment of assessment, as required in section 56, which shall be credited to and known as the Sovereign Camp fund, and shall also pay such camp dues as may be required by the laws of his camp. He shall pay any additional sovereign camp fund and camp

dues or either, which may be legally called. If he fails to make any such payment on or before the first day of' the month following, he shall stand suspended, and during such suspension, his beneficiary certificate shall be void."

The witness Yates, on cross-examination, testified:

"In explanation of the report, I will say that after a person obtains membership in this society, no report is made further than to show his suspension or reinstatement or death, or change from (one) camp to another, or such other change. If he pays aues and assessments regularly, his (name) does not necessarily appear upon the reports which are sent to my office. I have in my possession reports from the clerk, of the local camp for the month of December, 1916, but the same do not contain the name of Horace B. Marshall, or show when his December, 1916, installment or assessment was paid. * * * I ascertained the exact date of payment of the December, 1916, installment of assessment due by Horace B. Marshall from, the official notice of his death and the statement of camp officers included in the proof of death of said Marshall, same being hereto attached and marked Exhibits C and D respectively"

[1] This testimony clearly shows that the testimony of the witness excluded by the court on motion of plaintiff was hearsay, and was properly excluded. W. T. Rawleigh Med. Co. v. Hooks et al., 78 South. 310.[1] The certificate of insurance here sued on was issued to the insured on the 21st day of August, 1915, and under the provisions of sections 55 and 57 of the constitution and by-laws of the society, set out in the special replications and proof, the payment of the dues and assessments, made at the time of the issuance of the certificate, operate as a payment of the amount of the assessment and dues for the month of September, 1915. It is not denied, and cannot be, that the testimony of the witness Lamb given on his examination in chief, clearly shows that Marshall paid, on the first of each month thereafter, including December, 1916, all dues and assessments levied against him, but appellant contends that on cross-examination the witness flatly contradicted and repudiated the testimony given by him on his examination in chief, and that there is no other evidence in the case showing, or tending to show, that Marshall was a member of the society in good standing at the time of his death, and therefore the defendant was entitled to the affirmative charge. As we read the record, this contention cannot be sustained. The witness Lamb, after being shown the report dated October 13, 1915, was interrogated, and testified as follows:

"Q. Is that the report which you made to the Sovereign Camp? A. Yes, sir.

"Q. Does that report the first payment made by him? A. I always put down the number of members belonging to the camp and the total. I didn't send no names.

"Q. But suppose you have a new member, you send that in on that report, don't you? A. Yes, sir.

"Q. (Referring to the report.) Is this the report on which your new members went in? Didn't those other fellows go in along about that same time? A. One or two, I think, did. There didn't four go in that same night.

"Q. Didn't you have four new members in your October report? A. I don't remember about that.

"Q. Isn't that your handwriting over there on that report? Those new members brought that up to the total of 27 members, didn't it? A. Yes, that is my handwriting.

"Q. And that is the report you made to the Sovereign Camp? A. Yes, sir.

"Q. Now doesn't that report the first payment made by Marshall; that October report? A. No, sir; I sent in his September. That is what my books show. I have a copy of this at home. I didn't bring them."

[2] Moreover, the proof of death prepared and sent in by the officers of the local camp acting in the line and scope of their authority recites that Marshall was a member in good standing at the time of his death. This was an admission against interest, and was evidence for the plaintiff tending to show that the insured was a member in good standing. Attalla Compress & Storage Co. v. Adams, 80 South. 628; [2] 1 R. C. L. p. 509, § 49; Cunningham v. Cochran, 18 Ala. 479, 52 Am. Dec. 230; Chamb. Mod. Law of Ev. § 1340; Belmont Coal Co. v. Smith, 74 Ala. 206; Fleming v. Lunsford, 163 Ala. 540, 50 South. 921; Jones on Ev. § 255.

On the issues presented by the special replications to the defendant's several special pleas, under the evidence in this case, the issues were properly submitted to the jury, and the evidence will not justify this court in disturbing the ruling of the trial court on the motion for a new trial.

Affirmed.

BRICKEN, J., not sitting.

On Rehearing.

BROWN, P. J. The application for rehearing is rested upon the ground that the pronouncement in the opinion as to the effect of the recitals in the certificate or proof of death is in conflict with the statute (sections 8, 20, Acts 1911, p. 700), and the utterances of the Supreme Court in Beiser v. Sovereign Camp W. O. W. (Sup.) 74 South. 235,[3] and W. O. W. v. McHenry, 197 Ala. 541, 73 South. 97.

[3] This contention is not sustained. We do not hold that the recitals in the proof of death, to the effect that the insured was a member in good standing at the time of his death, constitutes a waiver of any defense the defendant may have or the basis for an estoppel to plead a violation or disregard of the constitution and by-laws of the order by the deceased member, but that, the certificate

being made by the officers of the local camp in strict accordance with their authority and in the line of their duty, with reference to a pending transaction, their official certificate, to. the effect that the deceased was a member in good standing at the time of his death, is evidence, and we might add, prima facie evidence, of that fact.

There is no merit in the application, and it is therefore overruled.

Application overruled.