SIDNEY OLIVER v. THE STATE.

No. 8266.    Decided March 5, 1924.

1.—Murder—Cross-Examination—Prejudicial Conduct of District Attorney—Defendant as Witness.

Where, on cross-examination of defendant after testifying to the homicide, he was twice asked if he did not tell an absent witness that he had just gotten even with a man who had beat him up, which appellant denied, whereupon the State in rebuttal was allowed to introduce a subpoena issued for said absent witness on a certain day and served on the same day, and was also permitted to put on the stand a brother of said absent witness and by him prove that the said absent witness was sick and unable to come to court, and whereupon the court charged the jury they could only consider said subpoena for the purpose of affecting the diligence of the State in the matter of securing the testimony of said absent witness; to all of which exception was taken, the same is reversible error.

**2.—Same—Evidence—Subpoena—Absent Witness—Charge of Court.**

The evidence of the subpoena for the absent witness and of the fact that she was ill and could not come should not have been admitted, and consequently the testimony having been erroneously admitted, the charge of the court limiting the same emphasized the error, and the judgment must be reversed and the cause remanded.

**3.—Same—Evidence—Res Gestae.**

Testimony or statements made by the deceased at times variously estimated at from a few minutes to about a half hour after he was shot, during which deceased was shown to be suffering intensely from mortal wounds, was properly admitted as res gestae.

**4.—Same—Evidence—Declarations of Deceased.**

Among other statements attributed to deceased, soon after being shot, was one to the effect that his pistol was empty, which fact was further established, and it was not erroneous to permit the State to show that during the earlier part of the night deceased's pistol was empty.

**5.—Same—Evidence—Declarations of Deceased.**

When self-serving statements purporting to have been made by deceased had been excluded by the court, there was no error in showing that deceased came to a hardware merchant on the night of the homicide to get cartridges and was told that the merchant had none.

**6.—Same—Evidence—Impeachment of Witness—Immaterial Matter.**

Where defendant witness' wife was placed at a certain point by the testimony of the husband, and it was not shown in the bill of exceptions that said wife had been seen at a different place at the same time by state's witness, there was no reversible error.

**7.—Same—Evidence—Army Discharge.**

There was no error in excluding testimony as to the army discharge of a witness for defendant, showing that his conduct as a soldier was excellent.

Appeal from the District Court of Hardin. Tried below before the Honorable J. M. Combs.

Appeal from a conviction of murder; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Coe & Briggs* and *Blain & Jones*, for appellant.—On question of creating prejudice in the minds of the jury: Tijerina v. State, 74 S. W. 913; Marchan v. State, 75 S. W. 532; Jennings v. State, 57 S. W. Rep., 642.

*Tom Garrard* and *Grover C. Morris*, Assistants Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Hardin County of the offense of murder, and his punishment fixed at confinement in the penitentiary for life.

There seems no contention over the proposition that deceased was shot and killed by appellant about three or four o'clock at night in the town of Sour Lake in Hardin County, a pump shotgun being used by appellant. The record reflects that the issue was as to whether the killing was upon self-defense or with malice. Appellant contended that as he came down the street past a building in course of erection known at the Sharpstein building, he was fired upon by some one who was in the darkness of the entrance to that building and that he raised his shotgun and emptied all the shells in the magazine before he quit firing. The State's case was that resulting from enmity based upon various causes appellant procured a shotgun and went to where deceased, a night-watchman in the discharge of his duties, was and that when deceased tried to escape into the partially finished building appellant emptied his gun into his back. Deceased was shot in two places in his back and from close range. Appellant stated that he was about eight or ten feet from the man at whom he shot. Deceased made a number of statements so closely connected with the shooting as to be res gestae in our opinion in which he stated that he was shot by appellant and that he was trying to escape and that his pistol was empty. We notice the contentions made by appellant on this appeal.

From the judgment we learn that the case went to trial on January 15, 1923. The State introduced six witnesses and rested its case. Appellant was his own first witness. He testified that about two or three o'clock on Christmas morning 1920 he was going along the street in Sour Lake and was fired at by a man whom he thought to be deceased and that with a shotgun had by him for the purpose of going duck hunting that morning, he returned the fire and that after his magazine was empty he ran to a nearby rooming house kept by Mrs. Ferris and engaged a room and there spent the rest of the night. His own home was about one hundred and fifty yards from the scene of the shooting. He said he awaked Mrs. Ferris and engaged a room from her. On cross-examination he was twice asked if he did not tell Mrs. Ferris that he had just gotten even with a man who had beat him up. It was in testimony that at a carnival a short time before that appellant had been severely beaten up and that he was not aware who his assailant was but thought it was deceased. Appellant denied having made the statement to Mrs. Ferris. In its rebuttal the State was allowed to introduce a subpoena issued on January 16, 1923, for Mrs. Ferris and served on the same day; also to put on the stand a brother of Mrs. Ferris and by him prove that she was sick and unable to come to court. By two bills of

exception appellant objected to this procedure. In his charge the learned trial judge told the jury that they could not consider the evidence as to the subpoena and as to illness of Mrs. Ferris save for the limited purpose of affecting the diligence of the State in the matter of securing the testimony of the lady. An exception was reserved to this charge. Appellant's motion for new trial is accompanied by the affidavit of Mrs. Ferris in which she states that at the time she rented a room to appellant he made no statement to her to the effect that he had gotten even with a man who had beat him up; also she says that she had never told anyone that he had made such statement.

We have thus the proposition that the State, apparently without sufficient foundation for belief that such was a fact, twice asked appellant while a witness if he had not made the statement indicated, to Mrs. Ferris. If he had in fact made same, proof of this before the jury would have most forcibly met and overthrown the defense made by appellant while a witness. He had twice denied having made the statement to Mrs. Ferris. At once the State issues a subpoena for her. The logical inference would be that she was wanted to prove that which appellant had denied, viz: that he did make said statement to her. There is no suggestion that she knew anything else of materiality. The process failing to bring her, the State wished to show to the jury that they had tried to get her without success, and also to put in testimony the reason why shey could not produce her. This they were permitted to do. This we have concluded they should not have been allowed to do. Such proof could shed no light on the homicide, but,—here sat the jury,—they know that the court lets in before them only that evidence which is for their aid in solving the question of guilt,—they also find in the charge of the court a direction that they can consider the issuance of the subpoena for Mrs. Ferris during this trial, and the proof that she could not come because of illness,—for the purpose of showing the State's diligence in trying to get her there as a witness. They do consider it. What then? We picture them in the jury room discussing it: "The State surely tried to get Mrs. Ferris here,—"Well, what did they want with her?"— "Why send an officer out post haste for her right during the trial?"— "Why, didn't you hear Oliver deny that he told her that he got even with the man that beat him up?"—Yes, he denied it twice." How natural and apparently irrestible the conclusion of some or all of the jury: "Well, if she had not been sick they would have gotten her here, she certainly would have said that he told her that very thing, that is all she could know about the case." To speculate on the extent of the evil effects of all this before the jury would seem idle. They could not take the path pointed out by the charge and consider the State's efforts to get the witness, and then turn on a

mental stop-cock and go no further. They had heard the questions to appellant. They knew if he had killed to get even this would likely be stated by him to the first friend he met. He had formerly stayed at the house of Mrs. Ferris. He went there first and immediately after the homicide. How likely that he did say it. The attorney knew that he said it. Mrs. Ferris had likely told him so. He was surprised when Oliver denied it. He asked him twice, and when he stuck to it the attorney tried to get Mrs. Ferris and but for her illness would have had her here and we would have had the truth. What we have just said suggests ordinary mental processes incident to this situation. It was capable of tremendous hurt to appellant whose punishment was fixed at imprisonment for life. The evidence of the subpoena for Mrs. Ferris and of the fact that she was ill and could not come, should not have been admitted, and consequently the testimony having been erroneously admitted, in our opinion the charge emphasized the error.

Testimony of statements made by deceased at times variously estimated at from a few minutes to about a half hour after he was shot during which deceased was shown to be suffering intensely from mortal wounds, was properly admitted as res gestae.

Among other statements attributed to deceased soon after being shot was one to the effect that his pistol was empty. This fact was further established. We do not think it was erroneous to permit the State to show that while riding in a car earlier in the night deceased had discharged his pistol a number of times and showed its empty cylinder to companions and in that connection stated that he had emptied the pistol.

There is a bill of exceptions complaining of the testimony of a hardware merchant that deceased came to him that night and wanted to get cartridges and that they went to his store for that purpose. The matter is confused. The statement of facts certified to as correct by the official court reporter shows that the witness testified as follows: "I went back to the store with him. I told him I hadn't a one." The bill of exceptions is prepared on the hypothesis that deceased applied to the witness for cartridges and told witness that he didn't have a one. In either event no error is shown for it appears in the qualification made by the trial judge to the bill, that the witness was introduced for the purpose of showing that deceased came to him to get cartridges and that in conjunction with the answer to this inquiry the witness volunteered the statement that deceased said he did not have a one, whereupon the court instructed the jury promptly that this latter statement was inadmissible and should not be considered.

Mr. O'Neal was a witness for appellant. He testified that his wife was at her home in Phillips Bluff, Louisiana, about ten days before a

638        96 Texas Criminal Reports.        [*March,*]

former trial of this case in January, 1922. Complaint is made because
the State was permitted to show that one Bonner had seen Mrs.
O'Neal for four or five weeks before the trial in January, 1922.
Where Bonner saw her is not averred in the bill and we can not say
that the witness was impeached on an immaterial matter from an
examination of the record. We notice in the statement of facts that
O'Neal swore that he was not at home in January, 1922 and did not
know where his wife was.

Appellant sought to introduce the army discharge of said O'Neal
showing that his conduct as a soldier was excellent. We have held
this character of testimony to be inadmissible and our conclusion
would seem to be specially sound in view of the fact that the war had
been ended five years at the time this witness was introduced, and
no other effort was made to show good reputation on his part.

For the error above mentioned the judgment will be reversed and
the cause remanded.

*Reversed and remanded.*