31 So.2d 378

**COX v. STATE.**

8 Div. 577.

Court of Appeals of Alabama.

June 30, 1947.

Curtis, Maddox & Johnson, of Jasper, for appellant.

A. A. Carmichael, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The appeal in this case is from a judgment of conviction for the offense of manslaughter in the first degree.

The indictment charged this appellant, and one Lecil Hall, with the offense of murder in the first degree. We gather from the record that a severance was granted, and Carl Cox, this appellant, was put upon trial, the jury, as above stated, returned a verdict finding him guilty of manslaughter in the first degree. Judgment of conviction, in accordance with the verdict, was pronounced and entered, from which this appeal was taken.

In briefs for appellant a full statement of facts is incorporated, and is here set out in full, as there appears no contention with reference to the correctness of the said statement of facts. To the contrary, the Attorney General representing the State, makes the statement in brief, as to this. Viz.: "The statement of facts, as set forth in appellant's brief, are substantially sustained by the record and we will not set out the facts."

The statement of facts is as follows:

"The evidence in this case, as presented on the trial showed that on Sunday, the 20th day of October, 1946, the deceased, Lloyd Lolley, went to the home of Troy Martin, about 4 miles outside of Haleyville, Alabama, at about 10:30 A. M. That about thirty or forty minutes later, Carl Cox, the Defendant, Lecil Hall and Thurston Simmons arrived at the home of Martin; that all five of these men decided to go get some whiskey and on their way, Lolley produced a pint, which they consumed; that another pint was secured by them at the 'Tavern' and they consumed it; they secured a quart and two pints a short while later and drove to a secluded spot in the National forest to drink without being apprehensive of the police. This evidence was without conflict.

"The evidence further showed that the deceased, Lolley, was the drunkest of the party and was very antagonistic towards the defendant, Cox. This was shown by the testimony of Simmons, who appeared as a witness for the State.

"Over the objection of Counsel for defendant, the State was permitted to show that, quite some time (several hours) prior to the alleged killing of Lolley, the defendant Cox and the deceased Lolley, became involved in an argument about which of them owned the best farm and that Lolley persisted in being antagonistic towards Cox and attempting to get him to fight.

"That Cox and Lolley wrestled around, all in the party being drunk but Lolley being the drunker, and two or three blows were struck. That Cox struck Lolley on the nose with his fist and caused it to bleed. This being the extent of the injuries.

"That at about 4:00 P. M. on this Sunday, Troy Martin and Thurston Simmons left the location where all of them had been drinking and wrestling and went back to Haleyville. That at the time they left, Cox, Hall, and Lolley were still at the same location in the forest and that Lolley was alive and was practically 'passed out' from the effects of the whiskey. This evidence was without conflict.

"The State's evidence itself showed that before Troy Martin and Simmons left the defendant, Cox, and Lolley were again on good terms and that Cox had made an effort to assist Lolley by picking him up where he had fallen in a ditch and placing him in the automobile.

"No threats, no violence and no hard feelings were existing between Cox and Lolley at the time Simmons and Martin left them; that the entire episode was a 'drunken brawl' in which the deceased, Lolley, played the major part.

"The evidence indicated the body of Lolley was discovered on the Tuesday following this Sunday beside the road, down an embankment. This was a road between the forest and Haleyville, the home of the parties involved; that death was probably caused from a broken neck. Further proven that Lolley had been alive when he stopped at the position his body was found as there were definite marks where he had kicked in the sand, and there was a rock on the body of the same type that were in the gully above where the body was found.

"The testimony of Carl Cox, the defendant, was not contradicted in any manner or in any way by the testimony of any witness for the State. It was strengthened and substantiated by the testimony of the State's witness, Simmons, in that he testified that Cox told the officers when they first approached him that Lolley was alive when he and Hall left him.

"Cox testified to all of the facts the State's witnesses did, as set out above, and further that after Martin and Simmons left, Lolley refused to let Hall or Cox assist him and asked them not to take him home. That Cox and Hall discussed the possible trouble with Lolley's family if they took him home in such a drunken condition and also considering Lolley's objection to their taking him home, just took him in the car, out of the forest, near houses and put him out on the side of the road so that he could sober up and come home when he wanted to.

"That when they started out of the forest, Cox was driving, Hall was in the front seat and Lolley was still in the back seat—practically 'passed out;' that Cox took his feet, Hall took his shoulders and they laid him on the side of the road. That at the time they put Lolley out he rolled over and grunted and that just prior to the time they put him out he was snoring and grunting.

"That the location they put him out of the car was a place that had ample space beside the road—'two or three steps'—before a fill or embankment dropped off for several feet.

"A photograph of the location at which Lolley's body was found was identified by Cox and introduced in evidence as Defense Exhibit #1. This photograph showed a steep embankment with washed out gully; this gully had vines and rocks in it and the vines were over the top of where the washed out portion extended into the walk-way. The evidence also indicated there were rocks at the top of this gully, above where the body was found.

"The testimony further showed the road the body was found on was a suitable route from the forest to Haleyville and the spot was about 5 miles from where they had been drinking and wrestling.

"Cox further testified that he did not kill Lloyd Lolley by throwing him off a fill, by throwing a rock or rocks on him, by throwing him in a ditch or kill him in any manner; that when he left him he was alive and drunk.

"Carl Cox's testimony was without conflict throughout and can easily and reasonably be reconciled with all the facts in the case."

At the close of the State's case, the defendant, shown by the evidence to be a young man, 21 years of age, introduced a large number of witnesses who testified that his character was good. Most of said character witnesses had known him practically all of his life. There was no conflict in the evidence as to this. In addition to the foregoing the defendant undertook to offer in evidence his honorable discharge from the U. S. Army in support of his good character, and insists that the court erred in refusing to admit as evidence of good character the honorable discharge of the defendant, certifying to his honesty and faithful service in the U. S. Army. In support of this insistence appellant's earnest and able counsel argue in brief: "The good character of the defendant was in issue in this case. He had been in the army for a period of several years. The witnesses testified as to his good character as before he entered the army and after his discharge. The discharge was offered as evidence of his good character while in the service, thereby linking up the testimony of the witnesses. We insist that where a soldier has seen service for several years, has been on the foreign battlefields and has received an honorable discharge, which certifies to his honesty and faithfulness that this of itself, is evidence of good character during that period. There would be no other way open to the defendant to prove his good character during that period and especially when most of it was spent on foreign battlefields."

And in conclusion in appellant's brief the following appears: "We are asking this Court, in the interest of this defendant and in the interest of the more than one hundred thousand boys and men from Alabama, to say to the world and to the Courts of Alabama that such a discharge is legal evidence before any Court where the Defendant's character is involved. We want this question flatly decided one way or the other. We do not believe there is but one way that it can be decided if traditions are to be upheld."

■ Without reference to our personal views upon this question, we find upon investigation the trial court acted in line with the authorities we have been able to find. Culbreath v. State, 22 Ala.App. 143, 113 So. 465. In said case this court (through our lamented Judge Samford) said: "Evidence offered by defendant that he had been in the United States navy, had crossed the ocean 16 times, and been honorably discharged, was immaterial and irrelevant." In 22 Corpus Juris Secundum, Criminal Law, § 677, page 1076, it is said: "The reputation of accused with respect to his service in the army or navy is generally not relevant either to prove or disprove his good character." Authorities cited in support are as follows: Hodge v. United States, 6 Cir., 13 F.2d 596; People v. Ervin, 342 Ill. 421, 174 N.E. 529; State v. Taylor, 293 Mo. 210, 238 S.W. 489; Oliver v. State, 96 Tex.Cr.R. 633, 259 S.W. 589. Hence we perforce must hold there was no error in the ruling of the trial court in this connection.

The evidence in this case is admittedly entirely circumstantial.

The entire case here bears marked analogy to our case of Anderson v. State, 30 Ala.App. 364, 6 So.2d 29. The opinion was written by Judge Simpson, now a Justice of the Supreme Court, and we think what was so ably expressed in said case, is conclusive of the case at bar. We approve and adhere to what was said and decided in the Anderson case, supra. It is, as stated, directly applicable to this case, and we see no necessity of reiterating or repeating in haec verba the sound propositions of law, as to circumstantial evidence

and other relevant propositions of law which, as stated, are here controlling.

The trial court in the instant case committed error to reversal in overruling and denying defendant's motion for a new trial as it affirmatively appears that grounds of the motion for a new trial numbered 1, 2, 3, 4, 5, 6 and 7, were in point and well taken. The above grounds of said motion, which we approve, was to the effect that the verdict of the jury was contrary to the law and the evidence in this case; and the verdict or decision is not sustained by the great preponderance of the evidence, or is contrary to law.

The foregoing is so indisputably apparent we are of the opinion no good purpose could be served by prolonging this opinion.

For the errors indicated the judgment of conviction from which this appeal was taken is reversed and the cause remanded to the lower court to be disposed of in accordance with this opinion.

Reversed and remanded.