55 So.2d 202

### SMITH v. STATE.
### 5 Div. 340.

Court of Appeals of Alabama.
Aug. 2, 1951.

Rehearing Denied Aug. 28, 1951.

See also 253 Ala. 277, 44 So.2d 250.

Walker & Walker, Opelika, for appellant.

Si Garrett, Atty. Gen., and Thos. M. Galloway, Asst. Atty. Gen., for the State.

**HARWOOD, Judge.**

This appellant has been found guilty of assault with intent to rape.

In a former proceeding he had been indicted for carnal knowledge of a girl under twelve years of age. That indictment arose out of the same facts and on the same occurrence as the present charge. The judgment in this former case was reversed by us for two reasons: First, that the indictment was void for the reason that it was returned by a grand jury without legal warrant in that the grand jury had not been properly drawn, and second, that the jury's verdict finding the appellant guilty of assault with intent to rape, under instructions of the court duly excepted to, was not responsive to the indictment. See Smith v. State, 34 Ala.App. 45, 38 So.2d 341, certiorari denied 251 Ala. 559, 38 So.2d 347.

In the trial below the appellant filed three pleas asserting former jeopardy. These pleas are substantially similar and all assert in the beginning that the appellant was "heretofore duly and legally indicted" etc.

The State moved to strike these pleas. This motion was denied.

The State then interposed demurrers to the pleas which were sustained.

In the order sustaining the demurrers to the pleas the court made the following statement: "The judgment sustaining the demurrers of the State to defendant's pleas 2, 3, and 4 is based on the case of Hanson v. State, 232 Ala. 585, 168 So. 700."

Appellant's counsel strongly urges as error the court's action in sustaining the State's demurrer to appellant's pleas of former jeopardy.

We pretermit consideration of the basis of appellant's counsel's argument asserting error in the court's ruling on the demurrer, for in our opinion the conclusion reached by the court in sustaining the demurrers must be considered as necessarily correct because of this reason:

Regardless of the demurrer filed to the pleas, the effect of which was to admit for pleading purposes the truthfulness of the pleas, which, among other things, averred that the appellant had heretofore been duly and legally indicted, etc., we judicially know that in Smith v. State, supra, we specifically held that this appellant had not been legally indicted, in that the grand jury was without legal warrant, and that the purported indictment was invalid and a nullity.

No legal jeopardy arises from a trial on a void indictment. See 6 Ala.Dig., Crim. Law, ☞ 170 for numerous authorities to this effect. Since we therefore judicially know that this appellant has not been in jeopardy, as asserted in the pleas, no probable injury to his substantial rights could rationally or properly be said to have resulted from the action of the court in sustaining the demurrer to pleas attempting to set up the defense of former jeopardy.

No error therefore can be charged to the lower court in this regard. Sup.Ct. Rule 45, Code 1940, Tit. 7 Appendix.

■ Appellant in the court below moved for a continuance on the grounds that this case, being the oldest case on the docket should have been set for trial on the first day of session, which was Monday, whereas it was set for trial on Thursday of that week, which was Thanksgiving Day, with the result that the jurors, because of prior engagements for Thanksgiving Day would be impatient and the appellant could not receive a fair trial at their hands.

The court stated that he had instructed the clerk to set this case for trial on the last day of the week for jury cases. The clerk had done this.

Worldly labor or secular pursuits are not interdicted on Thanksgiving Day. Belmont Coal and R. Co. v. Smith, 74 Ala. 206. Nothing is disclosed by the record tending to show that this case was not set as authorized by law. See Sections 316, 317, Title 15, Code of Alabama 1940. No error can be posited on the court's denial of the motion for a continuance.

For the State the alleged victim Joann Hall testified that she was now nine years old, but was six years of age at the time of this occurrence.

She further testified that about three years ago on a Friday afternoon in July she was at a carnival. Her testimony then continued as follows:

"Q. Just tell the court and jury what happened from the time you first saw him. A. I was back by the place you go in to see yourself in the mirrors—

"Mr. Boyd (interrupting): Will you speak out as loudly as you can so that these gentlemen over here can hear you.

"A. And that man come out there and grabbed me around my waist.

"Mr. Boyd: Now, talk out loud.

"A. This man come around and grabbed my side and I said 'don't do that.' He pulled me down; he pulled my pants down and got on top of me. I told him I wanted to go home, and he give me a quarter. That is all I can remember.

"Q. (By Mr. Boyd) What happened then? Did anybody come there? A. Miss Lillian.

"Q. Is that Mrs. Lillian Creson? A. Yes, sir.

"Q. Mrs. Lillian Creson come up? A. Yes, sir.

"Q. What happened after she got there? A. I got up and was crying, and told her I wanted to go home. She told me to go home. When I went home they asked me what I was crying for, and I told—"

A portion of this child's testimony on cross examination was as follows:

"Q. You know about Mrs. Lillian Creson coming in there? A. Yes, sir.

"Q. That was after it was all over with; wasn't it? A. She come in there; she heard somebody crying and she come up behind me.

"Q. Well, it was all over with at that time? A. He was getting off of me.

"Q. He was getting up off of you? A. Yes, sir."

Mrs. Lillian Creson, an employee of the carnival company testified:

"Q. I will ask you if you saw the defendant over there, Curtis Smith, there at the carnival company in the week you were here? A. I didn't see him until I saw him back in a tent.

"Q. What was he doing? A. Well, she was crying; I heard her crying but I did not know where she was. I just turned and walked in the tent. You see, the mirrors are on each side of the door, and I walked in. I could see the boy then.

"Q. Did you see this little girl? A. Yes, sir.

"Q. Where was she? A. She was on the ground and he was over her like this (indicating). It looked like he was,—well, he was just over her.

"Q. What was she doing? A. I don't remember that.

"Q. Was she crying? A. Yes, she was crying.

"Q. Did you notice anything in reference to the defendant? A. Yes, he had his trousers unfastened. You see, he was

looking like this (indicating), leaning over with his back towards me. Now, I could not see the front of his clothes, but I could tell that—

"Q. (Interrupting) What did you do? A. The girl was hollering; she hollered 'Miss Lillian, take me home.' She grabbed me by this hand, and when she did I hit him with this one (indicating). Of course, I did not hurt him. I was too mad. I just kept trying to hold on to her. I don't know the man's name that came up to help me."

Mrs. Hall, mother of Joann, testified that on the afternoon in question Joann came home crying and told her that something had happened to her down at one of the tents. She examined her and found a discoloration around the vagina. She then carried the child to Dr. Palmer.

Dr. Palmer found bruises on the outer part of the vagina, but no evidence of penetration, as "she was so small there couldn't anybody have done anything, but she had some bruises on the outer part of the vagina."

As a witness in his own behalf the appellant testified that on the day in question he had gone to the carnival company with another boy seeking employment. They had purchased some liquor, and he remembered buying four pints of gin and a fifth. He and some boys began drinking, and someone told him he was getting drunk and to go to a tent and go to sleep.

After this appellant contended that he remembered only that he got up once and relieved himself; that the next time he remembered anything he was outside the tent lying on the ground surrounded by people; then he remembered being in a car, and one of the men in the car hit him. The next thing he was conscious of was being in jail the next morning.

Appellant denied that he at any time assaulted the little girl, or pulled her pants down, or gave her any money.

Several witnesses testified as to appellant's good reputation.

■ The offense of assault with intent to rape includes all of the elements of rape except the consummation of the sexual act. These elements are an intent to have intercourse with a woman by force or fear, and against her consent. Smith v. State, supra.

Further, as stated in Curry v. State, 23 Ala.App. 140, 122 So. 303, 304: "The intent to rape is a condition of mind coupled with an effort by physical force to carry out the desire over the physical resistance of the victim. To justify a conviction, the evidence must be sufficient to show such acts and conduct of the accused as that there will be no reasonable doubt of his intention to gratify his lustful desires against the consent of the female and that the act would have been accomplished, but for the physical resistance of the female or by some outside force which caused him to desist. Lewis v. State, 35 Ala. 380. Where there is physical force on the part of the man, in an attack on a woman, coupled with evidence tending to prove an intent to force an intercourse, and a physical resistance on the part of the woman or an outside interference, the whole question is one of fact for the jury."

■ In determining the sufficiency of the evidence in this case to warrant its submission to the jury it must be viewed in the frame of the age of the assaulted girl. She asked to be permitted to go home, and she cried. Without going into the question of whether her tender age would prevent consent on her part, we think that under the circumstances her testimony was sufficient to show lack of consent and resistance. In addition we think the evidence would fully warrant the jury in finding that the appellant was prevented from accomplishing his purpose by the intervention of Mrs. Creson.

Nor do we think that the fact that Dr. Palmer's testimony that the child's vagina was too small to have permitted a penetration can be said to negative the existence of the essential intent on the part of the appellant if the jury could reasonably find that he entertained such intent and was prevented from carrying it out because of the resistance of the child and the intervention of Mrs. Creson.

■ The court below therefore did not err in refusing appellant's requested charges which were affirmative in nature, nor in overruling appellant's motion for a new trial on the grounds that the verdict was contrary to the evidence.

During the direct examination of the defendant the record shows the following:

"Q. How did you happen to be in Opelika that day? A. I was on my way to Montgomery hunting a job.

"Q. You met somebody here in Opelika? A. Yes, sir.

"Q. What happened?

"Mr. Boyd: We object to that unless it is brought down to the res gestae.

"The Court: Well, I assume he is planning to do that.

"Mr. Walker: Yes, sir.

"The Court: I will overrule the objection for the time being, and if it is not connected up it will go out, Mr. Boyd.

"A. I met this boy and I was fixing to go to the Employment Office here in Opelika and ask for work here.

"Mr. Boyd: If the court please, I can't see the materiality of this

"The Court: That is immaterial.

"Mr. Walker: We reserve an exception.

"A. So, I met this boy and he said that—

"Mr. Boyd: That is objected to.

"The Court: Overruled.

"Q. (By Mr. Walker) Will you proceed?

"A. I went out to the Lee Amusement Company with him; he was working for them.

"Q. Did you go out there looking for a job? A. Yes, sir.

"Q. Had you ever been there before? A. No, sir."

While counsel urges error in the above action of the court, it is not clear to us on what he posits error. While the court did state that the evidence sought was immaterial, the answer had already been made, and it was not excluded. Further,

the appellant had full benefit in the succeeding examination as to why he went to the carnival.

Mrs. W. J. Smith, mother of the appellant, testified that the appellant left home Thursday morning, the day before this occurrence. The record shows the following during Mrs. Smith's direct examination:

"Q. When did you last see him? A. Thursday morning.

"Q. Thursday morning before that Friday? A. Yes, sir.

"Q. Did he leave home that morning? A. Yes, sir.

"Q. Did he make any statement to you as to where he was going? A. Yes, sir.

"Mr. Boyd: We object to it.

"The Court: I sustain the objection.

"Mr. Walker: We respectfully except.

"You may have the witness.

"Mr. Boyd: No questions."

Appellant's counsel urges that the evidence sought, and which he was precluded from developing by the court's ruling, falls within the rule that what a person says on setting out on a journey, or to go to a particular place, explanatory of the object he has in view in so setting out, is part of the res gestae of the journey, and may be proven. Kilgore v. Stanley, 90 Ala. 523, 8 So. 130. See also Barfield v. State, 19 Ala. App. 374, 97 So. 378.

■ In the first place the record shows that the appellant had the benefit of the answer to the question, and that the testimony was not excluded. We do not construe the court's ruling in sustaining the State's objection after the answer was in, as precluding appellant's counsel from at least propounding further questions seeking to show the object and purpose of the journey, and thus invite a specific ruling by the court. Actually, we do not see anything in the record inviting our review.

Be that as it may, the appellant himself testified that he had left his home on Thursday morning to go to Montgomery and seek work. The next day he casually met a boy in Opelika and went to the carnival grounds seeking work. Since he met this

boy unexpectedly, he could not have known of this meeting when he left his home the day before, when his plan was to go to Montgomery. His intention to go to Montgomery at that time was therefore immaterial to the issues of this case, and this is all that the mother could have known. No probative value could have attached to testimony as to his statement as to where he was going, made more than 24 hours before, when under appellant's own testimony his plans were altered after his departure from his home on Thursday morning. No error therefore resulted from this ruling.

The court sustained the State's objections to the reception in evidence of appellant's honorable discharge from the Navy, a certificate of character signed by the President of the United States, and a notice of separation from the Navy.

This court is committed to the view that an honorable discharge from military service is not admissible to show good character of a defendant. Cox v. State, 33 Ala.App. 192, 31 So.2d 378; Culbreath v. State, 22 Ala.App. 143, 113 So. 465. By the same principle the certificate of character, and the notice of separation from service should also be considered inadmissible. No error therefore arose from these rulings.

At the completion of the court's oral charge the record shows the following occurrence:

"What says the State?

"(There was a conference between the court and the Solicitor.)

"The Court: For the benefit of the jury, as the Solicitor thinks the court omitted a verdict form, I should repeat, if you are convinced beyond a reasonable doubt that this defendant did assault Joann Hall, a female, with the intent to ravish her as charged in this indictment and which I have defined to you, the form of your verdict will be, we, the jury, find the defendant guilty as charged in the indictment. You do not fix the punishment in that case as the punishment is fixed by the court.

The other verdict forms stand as the court has given them to you.

"What says the State?

"Mr. Boyd: Satisfied.

"The Court: What says the defendant?

"Mr. Walker: We understand the court is repeating the charge, and we respectfully except to repeating it. I did not intend to except to the charge as given by you originally.

"The Court: You have the exception, Mr. Walker.

"Gentlemen, I am going to make it plain. If you are convinced beyond a reasonable doubt that the defendant did assault Joann Hall, a female, with the intent to ravish her as charged in the indictment and which I have defined to you, then the form of your verdict will be, we, the jury, find the defendant guilty as charged in the indictment. You do not fix the punishment in that case. The punishment is fixed by the court.

"Mr. Walker: We respectfully except to that portion of the court's charge which is repeated.

"The Court: You have the exception, Mr. Walker."

In his brief appellant's counsel contends as follows in reference to the above efforts of the court to make clear the charge to the jury: "We do not undertake to say what was the trial court's intention in thus repeating and reiterating the form of the verdict for conviction of assault with intent to ravish, but the unmistakable impression upon the jury was that this was the offense embraced in the indictment which the court wanted to emphasize. It did not take mental telepathy for the jury to get the fixed idea that the trial judge wanted a conviction of assault with intent to ravish. Certainly this charge in the indictment was greatly emphasized to the detriment of the defendant. Where there are two or more theories, bases for conviction or defenses, the giving of undue prominence to one in the charge of the court to the exclusion of the others can only have the effect of confusing the jury.

216

Welch v. State, 23 [28] Ala.App. 273, 280, 183 So. 879."

We find nothing in Welch v. State (which should be cited as 28 Ala.App. 273, 183 So. 879) in any way tending to sustain counsel's contention.

Nor do we consider that any merit attaches to the argument.

The court in its oral charge gave a full, fair and adequate oral charge to the jury. All forms of possible verdicts, including that of not guilty, and the bases upon which the jury should arrive at the possible verdicts, were fully explained. In addition some 36 written charges were given at the defendant's request. Many of these dwelt upon the burden cast upon the State in this prosecution, and the duty of the jury not to find the defendant guilty unless the State met this burden by evidence establishing the defendant's guilt beyond a reasonable doubt.

All in all, the oral charge of the court, in connection with the given written charges tended amply to instruct the jury as to the issues involved, and in our opinion fairly protected the rights of this appellant. We do not think that the effort on the part of the court to state with certain correctness, though it may have called for a repetition, of a part of his oral instructions, could properly be said to have probably injuriously affected this appellant in his substantial rights.

Requested written charges 1, 2, 3 and 4, being affirmative in nature, were properly refused under the evidence adduced.

Requested charges 36, 37, 41, 43, and 45 were properly refused as being either invasive of the province of the jury, argumentative, or misleading.

Requested charges 5 and 6 were refused without error and in our opinion the principle enunciated in these charges was adequately covered in the court's oral charge.

In our opinion this record is free of error probably injurious to the substantial rights of this appellant and is therefore due to be affirmed. It is so ordered.

Affirmed.