SIMMONS, Retired Circuit Judge.
Appellant, an indigent at nisi prius and on this appeal, was indicted for assault with intent to rape, convicted therefor, with punishment fixed by the trial court at twenty years imprisonment.
It appears that at the time of the offense appellant, a black, was 17 years of age. The alleged victim, a white female, was 18 years of age. Essential details of the evidence in chief will follow. The trial court heard and denied defendant’s motion to be tried as a youthful offender pursuant to Title 15, Section 266(l)-266(6), Code 1940 as amended. See Supplement, Vol. 5, pp. 162-3. We will not disturb the court’s denial of the motion.
Since the alleged victim named in the indictment was a minor, we deem it unnecessary to give her name. We will refer to her as the prosecutrix.
The evidence goes into detail as to the prosecutrix’s itinerary leading up to the res gestae of the alleged assault. We will omit many of the details. It is sufficient to state that the prosecutrix was at the home of her parents when two young men, both white, and neither of adult age, drove up and asked the prosecutrix to go swimming with them. One of the hosts was Jody String-fellow, 16 years of age, and the other was David Brown. After swimming, they decided to look for a black girl, a friend of the prosecutrix. They drove to the neighborhood where this black friend, Brenda, was believed to live. While driving in the neighborhood looking for Brenda, they saw defendant crossing the street in front of them. This was approximately 4:30 or 5:00 P.M. David recognized appellant and they spoke to each other. Appellant was asked if he knew Brenda. He said he did. David then invited him to get in the car and show them where Brenda lived. The prosecutrix made no objection. As we stated, supra, appellant was 17 years of age. David then asked him if he wanted to smoke some “dope”, which he explained to mean marijuana. The prosecutrix in her evidence referred to the defendant as “Tony”. We will also in this opinion use the name of Tony, meaning the defendant-appellant.
With Tony being permitted to take over the driving at some juncture of the ride, the parties continued the ride in search of marijuana and wine. Procurement of the latter was proposed at some juncture of the ride. Continuing their quest for the stimulants, they rode up to a house where several black youngsters were assembled. After inquiring for marijuana, one of the assembled blacks, Robert Summers, got into the car and the ride was resumed. Tony, over the protest of one or more of the occupants finally drove to an isolated spot on a dirt road where the car was stopped. The white boys alighted from the car leaving the victim in the middle between Tony and Robert Summers. At this stop and point the res gestae of the offense took place.
It appears from the evidence of the victim that the defendant, Tony, began his approach to get the prosecutrix to have intercourse with him. He used vile and vulgar language in this aggression. Robert Summers tried to protect the female against the approaches of defendant. Anyway, defendant, according to the state’s evidence, pulled a knife and opened the blade. Summers testified that Tony told the prosecutrix “if she didn’t give him nothing, he was going to cut her”. It also appears from the state’s evidence that Tony had stopped the car, removed the keys from the switch, and would not let anyone have them. He disregarded requests to go home. Tony, with his knife in his right hand, placed his right arm around the girl’s shoulder and with his left hand unbuckled her jeans, put his hand under her underwear and touched her private parts. Not only did the girl start crying but while telling Tony to leave her alone, she attempted with both of her hands to pull his hand out of her underwear. One of the riders, Jody Stringfellow, testified that he told Tony to leave her alone. With his knife in hand, Tony threatened, in her presence, “to mess *1263 up” Jody Stringfellow if he did not cooperate with him. At this point, according to the evidence, Tony told Jody Stringfellow he was going to mess him up if the prosecu-trix would not “do something” with appellant.
It also appears from the state’s evidence that Tony cut one of Robert Summers’ fingers when the latter tried to take the knife away from Tony.
Another witness, David Brown, testified that Tony took Jody Stringfellow by the shirt saying, “Now, you better talk her into it, too, or I’ll cut all three you little butots up”. The state’s evidence further showed that Tony hit Jody on his nose with his fist, not hard enough to make it bleed, but enough to let Jody know where Tony stood.
We will not undertake to delineate all the physical and threatening aggressions of Tony during his efforts to intimidate the prosecutrix into yielding to his uninvited approaches and physical efforts to satisfy his sexual desires with the girl. We do state that the record is replete with his intimidations to force sexual intercourse. He never did succeed. The police arrived during the progress of Tony’s intimidating efforts. This arrival broke up the assembly.
Defendant testified and denied these intimidating approaches. He admitted having a knife open in his possession. He claimed he used the knife to clean his fingernails. He denied all the state’s evidence about threats and also that he put his hands under the victim’s jeans and on her private parts. The state’s evidence and defendant’s denials made factual issues for the jury. The jury evidently believed the evidence adduced by the state. We see no reason to disturb. Whether the conduct of Tony indicated an assault with intent to rape the victim presented a factual issue for the jury.
It is said in Pumphrey v. State, 156 Ala. 103, 47 So. 156, as follows:
“ . . . each particular case, we think, must stand upon its peculiar facts and circumstances. .
“ • • . Intent, we know, being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.”
The offense of assault with intent to rape includes all of the elements of rape except consummation of the sexual act, with constituent elements being intent to have intercourse with woman by force or fear and against her consent. Smith v. State, 36 Ala.App. 209, 55 So.2d 202, certiorari denied, 256 Ala. 444, 55 So.2d 208.
Rape is the carnal knowledge of a woman by force and against her will. Harris v. State, 2 Ala. App. 116, 56 So. 55.
A person is guilty of rape, without reference to his ulterior intention in the event of resistance, if the woman yields through fear of, or to, superior force. Hooper v. State, 106 Ala. 41, 17 So. 679.
To constitute rape, the degree of force used need not be such as to place prosecutrix under such reasonable apprehension of death or bodily harm as to overpower her will; it being sufficient if she was under such duress that the act was accomplished against her consent. Cole v. State, 19 Ala.App. 360, 97 So. 891, certiorari denied, Ex Parte Cole, 210 Ala. 179, 97 So. 895.
We hold that the evidence was sufficient to present a jury question as to defendant’s guilt or innocence of the offense charged in the indictment. The court did not err in denying defendant’s motion for a directed verdict and also in denying the motion for a new trial.
Appellant contends that the trial court committed error in permitting the state to cross examine defendant, who took the stand in his own behalf, without first laying a predicate that the impeaching statements were voluntary. We do not credit this contention with merit. The Supreme Court in Brown v. State, 243 Ala. 529, 10 So.2d 855, observed:
*1264 “(1) As well-known, confessions of guilt under the law of Alabama are deemed involuntary, and are inadmissible without first laying a predicate showing they were made in the absence of an inducement of hope or fear.
“(2) In some states where this rule prevails it is held the defendant, on becoming a witness for himself, cannot be impeached by cross-examination touching a confession out of court unless it first be shown the confession was voluntary. See Annotation, 9 A.L.R. 1358. But in Alabama and other states, it has long been declared that when the defendant becomes a witness in his own behalf, he submits himself to cross-examination as any other witness; and he may be cross-examined touching his statements out of court in conflict with his testimony, without a showing that such statements were voluntary and were, therefore, inadmissible as a confession.”
We note that the signed statement, the subject of the cross examination, was not offered in evidence. Defendant denied making the statement which tended to impeach his direct testimony and his credibility.
We do not find any reversible error in the record. We affirm the judgment.
The foregoing opinion was prepared by the Honorable Bowen W. Simmons, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of Section 6.10 of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All Judges concur.