The appellant, Noel Fairchild, was found guilty of the offense of rape in the first degree and sentenced to a term of 13 years in the State penitentiary. The appellant was also ordered to pay a victim's compensation assessment of $150 and costs within nine months after his release from prison; he was further ordered to pay restitution in the sum of $189 for the benefit of the victim.
The alleged victim testified that she was 12 years old at the time of the offense and had invited William Cain, Matthew Fairchild, Richard Singley, and James Singley over to her house because she was "going with" William Cain, who was 13 years old at the time. In court, she identified the appellant as Matthew Fairchild. She testified that that evening she and William Cain, hereinafter "Billy", were in the back bedroom. Billy's head was in her lap and he was sleeping. She further testified that she liked Billy "a lot" and that he did not mind his friends touching her, although she would tell them to move their hands. The boys all left, but Billy and Matthew, who were 19, returned and began trying to touch her. She testified that she told them to stop and, thereafter, they left. She then went to the bedroom, turned on two radios and went to sleep. She was later awakened by someone trying to kiss her and sitting on her; however she testified that she could not identify the individual initially because of the dark. As her eyes became adjusted to the light, she observed the appellant lifting up her shirt. She attempted to fight back, and the appellant pinned her hands so that she could not move. He continued undressing her and she was able to free her hands and push him off of her. They continued fighting and he began choking her until she stopped struggling. She became aware that he was undressing and she began to struggle again, whereupon he grabbed her by the throat and so she again stopped struggling. She testified that he then raped her and that when he got off of her she ran into the *Page 1267 
bathroom. In the bathroom, she observed that the window had been lifted higher, the screen had two holes in it, and there were muddy footprints under the window and on the toilet and on the floor. She testified that the screen was pulled out, but she could not remember whether it was hanging on the hinges or resting on the ground. The victim testified that she was scared and could not find enough change for the pay phone, so she went to Billy Cain's house and asked to speak with him. Billy was asleep and when she asked him to come outside so that she could talk to him, he just looked at her and went back inside. She then found enough change in a pay phone to make a call in an attempt to find her mother; however, her mother had already left home. As she walked back to her home, her mother met her, sent someone to telephone the police, and took the victim to the hospital.
The victim's mother testified that when she returned home on the night in question, the door was unlocked, open, and her house was empty. She testified that she determined that something "had gone on," because her daughter was not there and the clock radio had been thrown, and she further noticed that the screen wire on the back of the windows and several of the window screens had been tampered with. Further, the bathroom window screen was on the ground. She then testified that she and a friend began to search for the victim and found her as she was walking back toward the house. The mother then testified that she observed mud on the toilet seat and below the window in the bathroom. She stated that when she first observed her daughter, she was crying and very upset, but detected no physical harm done to her. She further testified that later on the day of the alleged rape, she and her daughter went to do laundry and that when the daughter walked into the laundromat, she quickly exited, informing her that the perpetrator was inside. The mother confronted the alleged perpetrator and told him that she intended to see him taken to court. She further testified that the alleged perpetrator responded with laughter, and she identified the appellant as that person. On cross-examination, she stated that he also denied having committed the offense.
The investigating officer testified that the victim was crying and upset when he arrived at the scene. He further testified that she had some red marks on her throat and that the bathroom window screen was lying on the ground and had a small tear in it. He also observed mud in the area of the screen and the bathroom. On redirect, he also stated that he observed the broken clock radio.
The State also presented testimony of the doctor who prepared the rape kit and testimony concerning its chain of custody.
 I.
The appellant contends that the trial court erred in denying him youthful offender status. The record contains an extensive report of the investigation conducted concerning the youthful offender status sought by the appellant. The appellant, however, contends that the order which denied him youthful offender status does not state that the judge relied on the report in denying the request and the record is bare of any type of hearing which dealt with the request.
 "While an order denying a request for youthful offender treatment need not list or enumerate all the factors considered by the trial judge, it should reflect that some investigation, examination or inquiry was had of the youth before the request was denied. Watkins v. State, 357 So.2d 156 (Ala.Cr.App. 1977), cert. denied, 357 So.2d 161
(Ala. 1978). Although the order of the trial judge does not state that the Report of Youthful Offender Investigation was considered, that Report is contained in the record as Court's Exhibit 1. Because of this and because this issue was not raised in the trial court, we find no error in the denial of the request for youthful offender treatment.
 "The granting or denial of such a request is a matter in which much by necessity must be left to the discretion of *Page 1268 
the trial judge, who has the opportunity to personally observe the youth. McClendon v. State, 341 So.2d 174, 175 (Ala.Cr.App. 1976), cert. quashed, 341 So.2d 178 (Ala. 1977) ('almost absolute discretion'). While a statement by the trial judge of his reasons for denying youthful offender status would be sufficient to demonstrate the statutory requirement of investigation and examination, Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), we adhere to the principle that the trial judge is not required to state his reasons for denying youthful offender status. Morgan v. State, 363 So.2d 1013
(Ala.Cr.App. 1978); Reese v. State, 381 So.2d 107
(Ala.Cr.App. 1980)." Shula v. State, 465 So.2d 448, 451-52 (Ala.Cr.App. 1984), reversed on other grounds, Ex parte Shula, 465 So.2d 452 (Ala. 1985).
Almost absolute discretion is vested in the trial judge by the Youthful Offender Act to grant or deny youthful offender status after an appropriate investigation is conducted. Morgan v.State, 363 So.2d 1013, 1015 (Ala.Cr.App. 1978). The record clearly shows that the probation officer conducted an investigation of the appellant, recommending that youthful offender status be denied. See Speaks v. State, 494 So.2d 112
(Ala.Cr.App. 1985) reversed on other grounds, Ex parte Speaks,494 So.2d 118 (Ala. 1986). We therefore hold that the trial judge did not abuse his discretion.
 II.
The appellant contends that the trial court erred in denying his motion for mistrial based on the prosecutor's statement made during his opening argument. The following statements were made by the prosecutor in his opening argument:
 "PROSECUTOR: Listen to the little girl. It's a terrible thing. She was raped once on November 2, 1984 and now almost a year later she is going to get on that witness stand and we are going to have to rape her again.
 "DEFENSE COUNSEL: I am going to object, if it please the Court. That's highly prejudicial. I ask for a mistrial.
 We are going to have to rape her again. I have nothing to do with that.
 "THE COURT: The objection's well taken. Ladies and gentlemen, this is the point in the trial when the State is supposed to tell you what they expect for the evidence to show. Nobody in this courtroom is going to rape anybody at any time during this trial. This is going to be a very civilized proceeding. The only questions that are going to be allowed will be those questions allowed under the law. We have excellent counsel on both sides in this case and both have their hearts in the case. And as a result, each one of them from time to time may say something a little bit over passionate. You should not let that affect your judgment in any way, shape or form, but rather you should recall or remember and keep in mind the sole issue for you all to determine is whether or not this defendant committed all of the essential elements of the crime of rape and whether or not the State has proved by evidence from the witness stand and exhibits introduced into evidence that that has occurred. If the State does prove that beyond a reasonable doubt, they will be entitled to a verdict of guilty. If the State does not, then the defendant will be entitled to a verdict of not guilty. Okay."
The appellant contends that this remark created such prejudice against him that it could not be eradicated from the jurors' minds.
"It is, of course, the duty of every prosecutor to represent the interests of the state zealously, vigorously, and earnestly. His 'responsibility [as] a public prosecutor differs from that of the usual advocate; [his] duty is not merely to convict, but also to protect the innocent.' EC7-13, Alabama Code of Professional Responsibility." Davis v. State,494 So.2d 851 (Ala.Cr.App. 1986).
 " 'There is no doubt that, in the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be, prejudicial to the accused. . . . If every remark made by counsel outside of the *Page 1269 
testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation.' " Id., quoting Dunlop v. United States, 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799 (1897).
"The standard to be applied in testing language on a motion for mistrial is set out in Birmingham News Company v. Payne,230 Ala. 524, 162 So. 116, 117 (1935). To call for a mistrial, the argument to the jury must be (1) improper and illegal, and (2) of such prejudicial character that its probable effect is ineradicable by exclusion and rebuke on the part of the Court."Washington v. State, 507 So.2d 1358 (Ala.Cr.App. 1986). Furthermore, in Donnelly v. DeChristoforo, 416 U.S. 637, 643,94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974), the Supreme Court determined that a reversal is necessary if counsel's remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process."
 "A trial judge is in the best position to determine whether the prejudicial effects of an improper question can be eradicated by instructions to the jury. His determination of this matter should be accorded great deference. Retowsky v. State, 333 So.2d 193 (Ala.Crim.App. 1976). Pickett v. State, 417 So.2d 589
(Ala.Crim.App. 1982); Wysinger v. State, 448 So.2d 435
(Ala.Crim.App. 1983). There is a prima facie presumption against error when a trial judge immediately instructs the jury to disregard an improper question or remark. Mallory v. State, 437 So.2d 595 (Ala.Crim.App. 1983); Kelley v. State, 405 So.2d 728 (Ala.Crim.App.), writ. denied, 405 So.2d 731 (Ala. 1981). In the case at bar, the trial judge . . . took extra precautions to make sure each of the jurors understood his instructions."
Ringer v. State, 489 So.2d 646, 650 (Ala.Cr.App. 1986). " 'A motion for a mistrial should not be granted when the prejudicial qualities of a comment can be eradicated by action of the trial court.' Mallory v. State, 437 So.2d 595, 599
(Ala.Cr.App. 1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 722,79 L.Ed. 184 (1984)." Bates v. State, 468 So.2d 207, 209
(Ala.Cr.App. 1985). Any impropriety in the prosecutor's argument was eradicated by the action of the trial judge in his instructions to the jury. Carpenter v. State, 404 So.2d 89, 98
(Ala.Cr.App. 1980).
 III.
The appellant claims that the trial court erred in not allowing him to go into the victim's prior sexual history. The appellant argues "that the rape shield statute unconstitutionally denied him the right to cross-examine the victim and denied him the right to prove that the non-motile sperm that was found in the victim's vagina could have been the result of sexual intercourse with someone other than the appellant."
The Code of Alabama (1975), §§ 12-21-203(b), (c), state:
 "(b) In any prosecution for criminal sexual conduct or for assault with intent to commit, attempt to commit or conspiracy to commit criminal sexual conduct, evidence relating to the past sexual behavior of the complaining witness, as defined in subsection (a) of this section, shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or of other witnesses, except as otherwise provided in this section.
 "(c) In any prosecution for criminal sexual conduct, evidence relating to the past sexual behavior of the complaining witness shall be introduced if the court, following the procedure described in subsection (d) of this section, finds that such past sexual behavior directly involved the participation of the accused."
This statute has been held constitutional despite allegations that it denies a defendant the right to confront witnesses.Darrow v. State, 451 So.2d 394, 397 (Ala.Cr.App. 1984); Moseleyv. State, 448 So.2d 450 (Ala.Cr.App. 1984); Smith v. State,409 So.2d 455 (Ala.Cr.App. 1981). In upholding *Page 1270 
the constitutionality of the rape shield statute, this court has relied upon the policies supporting its enactment:
 " 'Complainant's past sexual conduct has no bearing on whether she has consented to sexual relations with defendant. The legislature recognized this fact and chose to exclude evidence of complainant's reputation for chastity as well as specific acts of sexual conduct with third persons in cases of rape and sexual deviate assault. The exclusion of this evidence does not prevent defendant from challenging or attacking complainant's credibility or veracity or otherwise utilizing cross-examination as an effective tool of impeachment. It merely denies defendant the opportunity to harass and humiliate the complainant at trial and divert the attention of the jury to issues not relevant to the controversy. At the same time, it provides an effective law enforcement tool by encouraging victims of rapes and other sexual assaults to report these crimes to the proper authorities without fear of having the intimate details of their past sexual activity brought before the public. The legislature was acting well within its powers in enacting reasonable legislation intended to eliminate the cruel and abusive treatment of the victim at trial by precluding the admission of prejudicial and irrelevant material and to promote the lawful administration of the criminal justice system. This finding is consistent with the holdings in other jurisdictions in which a defendant has attacked the constitutionality of rape shield laws.' " Young v. State, 429 So.2d 1162, 1163-64 (Ala.Cr.App. 1983), quoting People v. Cornes, 80 Ill. App.3d 166, 35 Ill.Dec. 818, 399 N.E.2d 1346 (1980).
In view of these policies and past Alabama case law, we find that the trial court did not err in refusing to allow the appellant to question the victim as to her prior sexual history.
 IV.
The appellant claims that the trial court erred in refusing to instruct the victim's mother not to use the word "rape" and in refusing to instruct the jury to disregard the victim's mother's answer. The error of allowing the witness to use the word "rape," if any, was harmless, in that the record shows that prior to the mother's testimony, this term was used several times during the victim's testimony as well as during the testimony of the investigating officer, without objection. See Scofield v. State, 496 So.2d 96 (Ala.Cr.App. 1986);Westbrooks v. State, 492 So.2d 1023 (Ala.Cr.App. 1984); Wigginsv. State, 491 So.2d 1046 (Ala.Cr.App. 1986).
 V.
The appellant contends that the trial court erred in denying his motion to exclude the evidence at the close of the State's case.
Code of Alabama (1975), § 13A-6-61, states in pertinent part:
 "(a) A male commits the crime of rape in the first degree if:
 "(1) He engages in sexual intercourse with a female by forcible compulsion; . . ."
The appellant specifically contends that the State's evidence was insufficient to prove the elements of identity and forcible compulsion. The record indicates that the victim identified her assailant once her eyes became adjusted to the light. While the victim's testimony is ample evidence as to the issue of identity in a rape case, circumstantial evidence has been held sufficient even where the victim could not positively identify the appellant as her assailant. Moore v. State, 474 So.2d 190,195 (Ala.Cr.App. 1985); Carter v. State, 405 So.2d 957
(Ala.Cr.App.), cert. denied, 405 So.2d 962 (Ala. 1981). Additionally, this court has held that "[t]o constitute rape, the degree of force used need not be such as to place prosecutrix under such reasonable apprehension of death or bodily harm as to overpower her will; it being sufficient if she was under such duress that the act was accomplished against her consent. Cole v. State, 19 Ala. App. 360, 97 So. 891, certiorari denied, Ex parte Cole, 210 Ala. 179, 97 So. 895."Brummitt v. State, *Page 1271 344 So.2d 1261, 1263 (Ala.Cr.App. 1977). The record provides ample proof that a struggle took place. Furthermore, the victim testified that the appellant attempted to choke her until she became still. The investigating officer also testified that the victim had red marks on her neck. The doctor who examined the victim after the alleged rape testified that he observed a small laceration or cut in her vagina. In this case, the alleged victim's testimony alone made out a case sufficient to present to the jury. Anthony v. State, 473 So.2d 554, 555 (Ala.Cr.App. 1984); Lake v. State, 475 So.2d 896 (Ala.Cr.App. 1985).
 VI.
The appellant claims that the trial court erred in allowing the State to impeach him without requiring a showing of the voluntariness of his statement. In the alternative, the appellant alleges that the State failed to properly impeach him. During the cross-examination of the appellant by the State, the following transpired:
 PROSECUTOR: "And do you remember talking to Officer McLain or an officer down there?"
APPELLANT: "Yes, sir; an officer."
 PROSECUTOR: "And do you remember telling that officer —"
 DEFENSE COUNSEL: "I am going to object, unless he lays a predicate."
PROSECUTOR: "Judge, —"
DEFENSE COUNSEL: "Just a moment —"
THE COURT: "What predicate?"
 DEFENSE COUNSEL: "Any statement that he might have made to any police officer."
 THE COURT: "I say what predicate are you saying he has to lay?"
 DEFENSE COUNSEL: "He has to lay the right of self-incrimination, the right to counsel."
 PROSECUTOR: "Not to this now, Judge. This is impeachment."
THE COURT: "That's true. Overruled."
 DEFENSE COUNSEL: "If it please the court, I never asked him anything about what he said to an officer going downtown. I would ask the jurors to be excused and ask the D.A. to make a showing as to what type of statement he's getting into. I don't know what he's impeaching him on. He hasn't said anything that an officer told him or he told the officer up to this point. He is trying to get a statement in that this young man allegedly made to an officer. I say he has to lay a predicate as to the right from self-incrimination, the right to counsel. He is saying it's for some type of impeachment purposes. There's no evidence in that he ever talked to an officer."
 THE COURT: "[Defense Counsel], correct me if I am wrong, but my understanding of the law is that on cross-examination of a defendant, who has denied the offense, a statement is admissible. I won't talk about the law too much on that because I don't want to be in a position of prejudicing the case by talking about the law. But I think on cross-examination it's entirely proper. The objection is overruled."
Thereafter, the appellant admitted that his testimony at trial was that he went to the victim's house twice on the night in question; however, he conceded that he might have told the police officer that he had only gone to the victim's house once that night.
In his brief, the appellant asked this court to reconsider its decision in Bates v. State, 52 Ala. App. 257, 291 So.2d 351
(Ala.Cr.App. 1974) and Brummitt v. State, 344 So.2d 1261
(Ala.Cr.App. 1977), wherein this court determined that a defendant may be cross-examined concerning statements made out of court, which conflict with his testimony, without a showing that such statements were voluntary and, thus, the statements were inadmissible as a confession. However, the Alabama Supreme Court expressly overruled Bates v. State, supra, in Campbell v.State, 341 So.2d 742, 744 (Ala. 1976), and, in so doing, implicitly overruled Brummitt v. State, supra, and any other case adhering to the above principle. In Campbell, the court stated "that *Page 1272 
such statements are admissible for an impeachment purpose only upon a predicate establishing that they are free from coercive or involuntary influences." Id. at 744 The Alabama Supreme Court further determined that "[t]he circumstances accompanying the making of the inculpatory statement will determine the extent to which this foundation must be established, e.g., a 'threshold' confession may, indeed, require evidence of a voluntary setting than an in-custody statement." Id.
However, the requirement that a predicate be laid applies only to statements in the nature of admissions of confessions.
 "It is settled in Alabama that admissions directly relating to the facts or circumstances of the alleged crime and connecting the defendant therewith are inculpatory admissions in the nature of a confession and are subject to the same rules as direct confessions, which are prima facie involuntary and inadmissible, but that admissions as to purely collateral matters, which are not confessory of guilt in any respect, are not within the scope of the rule, and the predicate as for a confession need not be laid. McGehee v. State, 171 Ala. 19, 55 So. 159 [(1911)]; Monk v. State, 258 Ala. 603, 64 So.2d 588 [(1953)]; Tillison v. State, 248 Ala. 199, 27 So.2d 43 [(1946)]; Read v. State, 195 Ala. 671, 71 So. 96 [(1916)]; Reeves v. State, 260 Ala. 66, 68 So.2d 14 [(1953)]; Jordan v. State, 26 Ala. App. 122, 156 So. 642 [(1934)]."
Campbell v. State, 341 So.2d 735, 740 (Ala.Cr.App. 1976),affirmed, 341 So.2d 742 (Ala. 1976).
In the present case, the prosecutor attempted to use the appellant's statement in which he failed to mention that he returned to the victim's house on the second occasion with Billy, in order to impeach his trial testimony that he did in fact return to the house on that second occasion. The alleged rape did not take place during either of those two visits. The first statement, which was made to the police, was not confessionary of guilt in any respect and, thus, did not require the predicate as for a confession.
AFFIRMED. All the Judges concur.