Appellant was convicted of kidnapping in the second degree in violation of § 13A-6-44, Alabama Code 1975. He was sentenced to 18 years' imprisonment.
On November 30, 1981, appellant called the Huntsville Police Department after being told the police were looking for him. Appellant said he was willing to talk.
Testimony given at the hearing on the motion to suppress the statements given and at trial differed significantly between the police investigator and the appellant as to what happened after the appellant arrived at the police station.
Investigator James Parker of the Huntsville Police Department testified that he interviewed the appellant on three different occasions. The first interview was on November 30th at 12:15 p.m. with another investigator also present. Immediately preceding this interview, Parker stated, he read the appellant his rights as follows:
 "You have the right to remain silent. If you choose to talk you may stop talking at any time. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer of your own choosing or with anyone else. You may have your counsel present during any questioning or during *Page 562 
any statement you may make. If you can not afford an attorney, one will be appointed for you free of charge before any questioning." (RT 62-3)
Parker testified further that the appellant said he understood each of the rights explained to him and said he understood that he was neither being threatened nor promised anything in order to secure his statement. Appellant was then asked, "With these rights in mind do you wish to talk to me?" He replied that he was not involved in the crime and did not want to talk about it. The appellant never asked to speak to an attorney. Parker said that between 12:15 p.m. and 1:10 p.m. the appellant was photographed and fingerprinted, but not charged.
Parker stated that neither he nor anyone in his presence threatened or coerced the appellant in order to get his statement, nor did they physically abuse him or harm him in any way. In addition, Parker indicated that no offer of any reward or hope of reward was made to the appellant or any member of his family in order to make him give a statement.
Between 1:10 p.m. and 7:10 p.m. appellant was not jailed but remained at the police station. After the fingerprinting, appellant was asked if he would take a polygraph test. Appellant replied he would if he could speak to his mother. His mother was brought to the police department, and between 4:00 p.m. and 4:30 p.m. the appellant was given a polygraph test.
After eating, appellant was again read his constitutional rights at approximately 7:10 p.m. At that time he indicated he wanted to talk to Parker. Then appellant made a tape-recorded statement during which he confessed to the kidnapping in question and to a rape. The appellant was then charged and jailed.
The next day, appellant was again read his constitutional rights, which he waived, and he made a tape recorded statement again confessing to the kidnapping charge, apparently omitting references to any other crime. Appellant's testimony differed with Investigator Parker's in many respects.
He testified that after he was photographed and fingerprinted, a detective ". . . asked me questions did I do it and I kept telling him, no."
At the hearing, appellant claimed the questioning detective threatened to "give me a ride" and hit him on the head with a phone book. Appellant also said that before he made a statement, he was told that if he admitted to one or two charges, the rest would be dropped and that the detective told him what to say in his statement.
Appellant's sole issue on appeal is whether the trial court erred in admitting a confession into evidence which the appellant claims was coerced.
All extra-judicial confessions are prima facie involuntary, and it is the trial court's duty to determine whether a confession has been voluntarily made before it can be admitted into evidence. Rogers v. State, 365 So.2d 322, writ denied, ExParte Rogers, 365 So.2d 334.
The method for determining the validity of a confession has been articulated by this court as follows:
 "The voluntariness of an alleged confession is a question of law for the court and should be decided by the trial court upon preliminary proof, showing the circumstances surrounding the alleged confession, taken outside the hearing of the jury, and such finding will not be disturbed unless it appears contrary to the great weight of the evidence or is manifestly wrong."
Carter v. State, 53 Ala. App. 43, 297 So.2d 175, 180 (1974).
After a careful review of the record, we affirm the trial court's decision. Making decisions based on disputed facts is an essential duty of trial judges. See, Elliott v. State,337 So.2d 158 (Ala.Cr.App. 1976); Kuczenska v. State,378 So.2d 1182 (Ala.Cr.App. 1979), cert. denied 378 So.2d 1186 (Ala. 1980).
Although appellant does not directly address the issue in his brief, we feel we should discuss the question whether the two *Page 563 
subsequent interrogations of the appellant violated his privilege against self-incrimination.
Of course, statements obtained in violation of the appellant's right to remain silent are inadmissible in a later proceeding against him. Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Hines v. State,384 So.2d 1171 (Ala.Cr.App.), cert. denied 384 So.2d 1184 (Ala. 1980).
Thus, if an individual indicates at any time during questioning that he wants to remain silent, police must cease their interrogation. Miranda, supra.
Although it is appellant's right to refuse to answer questions, it is also his right to change his mind for any reason and submit to questioning if he prefers to do so. UnitedStates v. Hodge, 487 F.2d 945 (5th Cir. 1973); Jennings v.United States, 391 F.2d 512 (5th Cir. 1968), cert. denied,393 U.S. 868, 89 S.Ct. 154, 21 L.Ed.2d 136 (1968). Under these circumstances, however, the State maintains the burden of showing that the appellant "knowingly and intelligently" waived his privilege against self-incrimination. Miranda, supra.
The tape recording of the second interview played for the court at the suppression hearing clearly indicated that appellant was advised of his constitutional rights and that he subsequently waived them. When asked by appellant's counsel on cross-examination whether anything occurred that would have changed appellant's mind between the first and second interviews, Parker replied, "he had taken the polygraph test." (RT 51).
Certainly, the decision of the trial judge in this case should not be disturbed since it is neither contrary to the great weight of the evidence nor manifestly wrong.
The transcript does not support factual allegations made the basis of certain other arguments of appellant as to voluntariness.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.