Jonathan David Shula was indicted and convicted for first degree rape. Sentence was twenty years' imprisonment. Two issues are raised on appeal.
 I
Shula argues that his confession should have been suppressed because there was no voluntary, intelligent or knowing waiver of constitutional rights defined in Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because the accused was an eighteen-year old high school student, "who was acting in a bizarre or unusual fashion, and who appeared frightened, upset and nervous." (Appellant's Brief, p. 22.) Shula also argues that the record reflects only silence as to whether or not Shula wished to waive his constitutional rights.
Around 4:00 or 4:30 on the afternoon of December 13, 1982, the victim was assaulted and raped. Shula was taken into custody at 5:10 that same afternoon. At approximately 8:00 that night, Sergeant Other Clifford Lockett took a statement from Shula at the Mobile Police Department. Sergeant Lockett read Shula the Miranda warnings "from a Miranda card". He learned that Shula was an eighteen-year old high school student who had never before been arrested. Shula told the sergeant that "after his mother died he didn't want to live and tried to commit suicide", that he had been "stabbed by a girl, hit by a car in the past", and "that all he wanted was to go to jail."
The evidence which tends to support an involuntary waiver is Lockett's testimony that Shula appeared upset, nervous, and agitated. Lockett testified that, when he walked into the interrogation room, Shula "had taken all the change out of his pocket and was fiddling with it on the table. He would answer a question easy and then he started talking about . . . send(ing) him to the penitentiary forever or something like that, . . . and then he'd settle down and we started discussing things."
 "Q. (Defense Counsel): What else did he do that was bizarre?
 "A. His mannerisms were more — you'd be talking to him and he'd start fooling with his change and that sort of stuff more than anything else."
At trial Lockett testified that Shula was "very nervous". Shula said, "Just go ahead and send me to jail forever, or something to that effect." Shula's conduct was "unusual". In fact, the sergeant found "the whole complaint unusual" because the *Page 450 
crime occurred in a lot behind the victim's apartment in "broad open daylight."
Although Shula gave an "affirmative" response that he understood his Miranda rights, Sergeant Lockett did not request Shula to sign a written waiver of his constitutional rights because "the way the interview started out I didn't feel like I would get a response to that or a statement at all."
 "His agitated condition at the first part of our interview, I did not feel like he would give me any statement at all if we went (to) the written form where he signed waiving his rights."
. . . .
 "Because it scares several subjects when they have to sign their name to anything after being advised of it when they're charged with a crime."
. . . .
 "They tend to misunderstand signing that they've been advised of their rights that they're admitting guilt."
When Shula gave an affirmative response indicating that he understood his rights he was agitated, upset, and acting in an unusual manner.
Lockett tried to get Shula to "settle down" because Shula was "talking about sending him to the penitentiary for life and this sort of thing." After Shula smoked his first cigarette he "started relaxing a little bit", and "after he smoked the second cigarette he broke down and started crying", and then told Lockett about the incident. When he cried, Shula "merely said he didn't know why he had done what he had done."
Facts to support the trial judge's determination of voluntariness are found in Sergeant Lockett's testimony that Shula stated that he understood his rights, that Lockett thought he understood them, and that Shula appeared to understand the Miranda warnings and questions Lockett asked him. Shula did not appear to be under the influence of any alcohol or narcotic drug. See Arnold v. State, 348 So.2d 1092,1096 (Ala.Cr.App.), cert. denied, 348 So.2d 1097 (Ala. 1977).
Shula did not testify at the hearing on the suppression of his confession or at trial. Although his pretrial motion for mental examination was granted, the record does not contain the results of any examination.
In order to use Shula's confession at trial, the State had to prove that Shula knowingly, intelligently and voluntarily waived his Miranda rights prior to making the statement.Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612,16 L.Ed.2d 694 (1966). Although a Miranda waiver must be made specifically, it need not be express but may be inferred from the circumstances. North Carolina v. Butler, 441 U.S. 369, 373,375-76, 99 S.Ct. 1755, 1757, 1758-59, 60 L.Ed.2d 286 (1979). However, a waiver cannot be presumed from the accused's silence or from the mere fact that he made a confession. Miranda,384 U.S. at 475, 86 S.Ct. at 1628. The courts must presume that an accused did not waive his rights and the burden is on the prosecution to prove a valid waiver. Butler, 441 U.S. at 373,99 S.Ct. at 1757. See also McDonald v. Lucas, 677 F.2d 518,521-22 (5th Cir. 1982). "Mere silence after a warning is not a waiver. The simple fact that a statement was eventually obtained by in-custody interrogation is not a waiver."Carpenter v. State, 50 Ala. App. 543, 546, 280 So.2d 804, cert. denied, 291 Ala. 351, 280 So.2d 808 (1973); Sullivan v. State,351 So.2d 659, 664 (Ala.Cr.App.), cert. denied, Ex parteSullivan, 351 So.2d 665 (Ala. 1977).
An explicit written waiver is strong evidence that the accused voluntarily waived his rights. Butler, 441 U.S. at 373,99 S.Ct. at 1757. But a valid waiver may be found even if the accused previously refused to sign a standard waiver card.Martin v. United States, 691 F.2d 1235, 1239 (8th Cir. 1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447
(1983). The failure or refusal to sign a written waiver form does not demonstrate that the waiver was involuntary. UnitedStates v. Bosby, 675 F.2d 1174, 1182 n. 13 (11th *Page 451 
Cir. 1982); Player v. State, 421 So.2d 1338 (Ala.Cr.App. 1982);Proctor v. State, 391 So.2d 1092 (Ala.Cr.App. 1980).
 "An express written or oral statement of waiver of the fifth amendment right to remain silent or of the right of counsel is neither necessary nor always sufficient to establish that an accused's waiver was voluntary, knowing and intelligent. See North Carolina v. Butler, 441 U.S. 369, 370, 99 S.Ct. 1755, 1756, 60 L.Ed.2d 286 (1979), where the Court set forth these guidelines for determining the validity of a waiver of Miranda rights:
 "(M)ere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.
 "441 U.S. at 374, 99 S.Ct. at 1757, 60 L.Ed.2d at 282
(footnote omitted). Obviously, the validity of a waiver in any case must be determined by analyzing `the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed.2d 1461, 1466
(1938)."
 Jordan v. Watkins, 681 F.2d 1067, 1074 (5th Cir. 1982).
The particular problem in this case is that Sergeant Lockett was never asked and never specifically indicated that Shula waived his rights. Although Shula has noted the similarities between this case and Carpenter, the Attorney General has not addressed this particular facet of the voluntariness problem. Under the singular facts of this case, the more prudent course of action dictates that this cause be remanded for an evidentiary hearing on whether or not Shula knowingly, intelligently, and voluntarily waived his Miranda rights. At the hearing, Shula has the right to be present with counsel. The trial judge is directed to make written findings of fact on this issue. Those findings and a transcript of the hearing shall then be forwarded to this Court for further review.
 II
The trial judge did not abuse his discretion in denying Shula's request for Youthful Offender treatment. The trial judge ordered "an Investigation be made to determine if the defendant should be treated as a Youthful Offender." Approximately one month later, the request was denied. The record contains no objection to this denial. Shula filed a pro se motion for new trial listing numerous grounds but did not raise this issue.
At the time of his arrest, Shula was seventeen years old and in the eleventh grade. The Report of Youthful Offender Investigation shows that Shula appears to have been suffering from "emotional and social adjustment problems since he was quite young." His educational discipline record reveals that he was suspended on three occasions for incidents involving violence or attempted violence against other students. On the day of his arrest he had been suspended from school due to "problems . . . including threatening the teacher." Although he had no juvenile or criminal record, there were "strong indications and reports that Shula was smoking marijuana while at school, . . . and possibly experimenting with other types of drugs."
While an order denying a request for youthful offender treatment need not list or enumerate all the factors considered by the trial judge, it should reflect that some investigation, examination or inquiry was had of the youth before the request was denied. Watkins v. State, 357 So.2d 156 (Ala.Cr.App. 1977), cert. denied, 357 So.2d 161 (Ala. 1978). Although the order of the trial judge does not state that the Report of Youthful Offender Investigation was considered, that Report is contained in the record as Court's Exhibit 1. Because *Page 452 
of this and because this issue was not raised in the trial court, we find no error in the denial of the request for youthful offender treatment.
The granting or denial of such a request is a matter in which much by necessity must be left to the discretion of the trial judge, who has the opportunity to personally observe the youth.McClendon v. State, 341 So.2d 174, 175 (Ala.Cr.App. 1976), cert. quashed, 341 So.2d 178 (Ala. 1977) ("almost absolute discretion"). While a statement by the trial judge of his reasons for denying youthful offender status would be sufficient to demonstrate the statutory requirement of investigation and examination, Kent v. United States,383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), we adhere to the principle that the trial judge is not required to state his reasons for denying youthful offender status. Morgan v. State,363 So.2d 1013 (Ala.Cr.App. 1978); Reese v. State,381 So.2d 107 (Ala.Cr.App. 1980).
This cause is remanded with directions.
REMANDED WITH DIRECTIONS.
All Judges concur.