The appellant, James Edward Self, was found guilty of burglary in the third degree, in violation of § 13A-7-7, Codeof Alabama (1975). He was sentenced to ten years' imprisonment and was ordered to pay $1,341 in restitution.
The appellant and Michael Nixon were driving around and looking for houses to break into on January 19, 1986. They pulled into the yard of a house, turned the car around, and opened the trunk. They then ran two dogs off the property, approached the house, and knocked on the door. The appellant then kicked the door open after determining that no one was present. They entered the house and took three guns, a television set, a V.C.R., a microwave oven, and some other items. They also broke into two other houses. They also took some ammunition for the guns. They drove to a place called the "Strip Pit" to shoot the guns. Thereafter, they drove to Fairfield and sold some of the items for approximately $200 to $300.
Bill Barrentine testified at trial that his house was broken into on January 19, 1986. He stated that his door was kicked in, and he described the property that was taken.
Chief Deputy Calvin C. Moreland, of the Bibb County Sheriff's Department, testified that he investigated the burglary. He testified that he first came into contact with the appellant and Nixon at the Bessemer Police Department on February 2, 1986. Moreland read the appellant his Miranda rights and taped his conversation with the appellant. The appellant confessed to the burglary in his taped statement. He signed a waiver of rights form and volunteered to ride with Moreland to Barrentine's residence in order to identify the same house. Moreland stated that the appellant was very cooperative. He indicated that he did not make the appellant any promises or offer any hope of reward or threaten or coerce him in an attempt to secure the statement. Moreland further stated that the appellant did not appear to be under the influence of drugs or alcohol.
The appellant testified, outside the hearing of the jury, that he was under the influence of drugs when he made the statement. He testified that he did not actually remember signing the waiver of rights form. He also indicated that he was not thinking clearly when he spoke to Chief Deputy Moreland. The appellant, on cross-examination, admitted that what he had *Page 813 
told Chief Deputy Moreland on the tape was the truth. He further testified that, when he gave the statement, he was on a "depressant type drug" and was neither sick nor "out of his mind." He further stated that he understood that he was talking to Chief Deputy Moreland about the burglaries. A transcribed copy of the tape was admitted into evidence.
Michael Nixon testified that he was a friend of the appellant and participated in the burglary with him. He testified that they were intoxicated during the burglary and that, though he said he was uncertain as to what they had ingested, he believed that it was probably alcohol. Nixon testified that he was charged in juvenile court for this offense.
 I
The appellant argues that the trial court erred in admitting his confession because the State failed to lay a proper predicate. However, the record clearly shows that the appellant was advised of his Miranda rights prior to giving his statement. The tape recording and the transcription thereof include the initial conversation between Chief Deputy Moreland and the appellant. The evidence indicated that Moreland read the appellant his rights and, from the record, it appears that the appellant was reading the rights along with Moreland. The appellant stated several times that he understood those rights. He further stated that he did not need any explanations of the rights and that he was signing the statement of his own free will. He further acknowledged that he had not been made any promises or threatened in any way. The record also contained the waiver of rights form signed by the appellant.
The appellant contends that he was under the influence of drugs when he made his statement and was not thinking clearly when he spoke to Moreland. However, the appellant also testified that he had understood his rights and that what he told Moreland on the tape was the truth. Chief Deputy Moreland testified that he did not make the appellant any promises and did not threaten him. He further testified that the appellant did not appear to be suffering from the effects of any drugs or alcohol or suffering from any injuries, wounds, or illnesses.
 "This court has held that, where the testimony of the officer shows that the appellant was read his rights, stated that he understood those rights and that he was not being threatened, coerced nor promised anything to secure this statement, indicated that he wanted to talk and made a recorded statement, this testimony was sufficient to sustain a finding that the appellant's statement was voluntary, even though the defendant contended otherwise. See Sales v. State, 432 So.2d 560 (Ala.Crim.App. 1983)."
Thompson v. State, 503 So.2d 871, 878 (Ala.Cr.App. 1986), affirmed, 503 So.2d 887 (Ala. 1987). See also Gholston v. State,494 So.2d 876, 884 (Ala.Cr.App. 1986); Gwynne v. State,499 So.2d 802, 807 (Ala.Cr.App. 1986).
 "The voluntariness of an alleged confession is a question of law addressed to the trial court, whose ruling will not be disturbed on appeal unless it appears to be contrary to the great weight of evidence or is manifestly wrong. Tice v. State, 386 So.2d 1180 (Ala.Cr.App.), cert. denied, 386 So.2d 1187 (Ala. 1980); Garrison v. State, 372 So.2d 55 (Ala.Cr.App. 1979); Moore v. State, 469 So.2d 1308 (Ala.Cr.App. 1985). The trial judge, in determining the voluntariness of a confession, must consider all the attendant circumstances, with the ultimate inquiry being 'whether the defendant's' rational intellect and free will were overcome at the time of his confession. Green v. State, 439 So.2d 816
(Ala.Cr.App. 1983). However, in order for intoxication to render a confession inadmissible, it must be shown that the mind of the defendant was substantially impaired when the confession was made. Moore v. State, 415 So.2d 1210, 1214
(Ala.Cr.App. 1982), cert. denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982), and cases cited therein. The defendant's intoxication must amount to a 'mania' which impairs the will and mind to the extent that the person confessing is unconscious of the *Page 814 
meaning of his words; a lesser state of intoxication will not render the confession inadmissible. Boggan v. State, 455 So.2d 228
(Ala.Cr.App. 1984)."
McCammon v. State, 499 So.2d 811, 815 (Ala.Cr.App. 1986).
"The appellant has failed to present sufficient evidence to establish the degree of intoxication necessary to render his statement inadmissible." Hold v. State, 485 So.2d 801, 804
(Ala.Cr.App. 1986). The trial court was correct in admitting the appellant's statement into evidence.
 II
The appellant argues that the trial court erred by denying him youthful offender status. The case action summary reveals that the trial court ordered that "[u]pon review of petition and probation officer's report, petition for YOA [youthful offender status] is denied." The trial judge then signed the order.
 "When deciding whether to grant youthful offender status, it is expected that the nature of the crime charged, along with prior convictions of the defendant, will be considered, as well as any other matters deemed relevant by the court. Clemmons v. State, 294 Ala. 746, 321 So.2d 238
(1975). No prescribed format is required. Edwards v. State, 294 Ala. 358, 317 So.2d 512 (1975). Neither is the trial court required to articulate on the record the reasons for denying youthful offender status to a defendant. Garrett v. State, 440 So.2d 1151 (Ala.Cr.App. 1983). In deciding whether or not to accord youthful offender status to an accused person, the discretion of the trial judge is virtually absolute. Morgan v. State, 363 So.2d 1013 (Ala.Cr.App. 1978)."
Goolsby v. State, 492 So.2d 635, 636 (Ala.Cr.App. 1986).
"A trial court's order denying youthful offender treatment, 'should reflect that some investigation, examination or inquiry was had of the youth before the request was denied.' Shula v.State, 465 So.2d 448, 451 (Ala.Cr.App. 1984), reversed on other grounds, Ex parte Shula, 465 So.2d 452 (Ala. 1985) (citingWatkins v. State, 357 So.2d 156 (Ala.Cr.App. 1977), cert. denied, 357 So.2d 161 (Ala. 1978))." Talley v. State, [Ms. 3 Div. 450, February 24, 1987] 504 So.2d 741 (Ala.Cr.App. 1987). " 'Here, it does not affirmatively appear that the decision of the trial judge was arbitrary or made without some examination or investigation. The record provides no basis for overturning the denial of the defendant's request for youthful offender status. Carthon v. State, 419 So.2d 293, 295
(Ala.Cr.App. 1982).' Garrett v. State, 440 So.2d 1151, 1153
(Ala.Cr.App. 1983)." Herriman v. State, 504 So.2d 353, 357
(Ala.Cr.App. 1987).
 III
The appellant argues that he was denied effective assistance of counsel. He states in his argument on appeal, "Trial counsel has insisted that this issue be raised, and for appellate purposes, it is defendant's position that trial counsel's performance failed to meet the objective standards of reasonableness." The appellant cites no specific instances in which his trial counsel's representation was unreasonable or in any sense ineffective. Thus, the appellant has failed to meet his burden under Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The Alabama Supreme Court in Ex parte Baldwin, 456 So.2d 129
(Ala. 1984), affirmed, 472 U.S. 372, 105 S.Ct. 2727,86 L.Ed.2d 300 (1985), addressed the proof required to establish a case of ineffective assistance of counsel:
 "The burden of proof is upon the petitioner. The United States Supreme Court, in a very recent decision, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), explicitly described the burden of proof with regard to this claim. First, petitioner must show that counsel's performance was so deficient as to fall below an objective standard of reasonableness. Counsel's conduct must be considered within the context of the facts of the particular case and as of the time of the alleged misconduct. Second, petitioner must show that counsel's deficient performance *Page 815 
prejudiced the defense and deprived petitioner of a fair trial. Prejudice is shown when, absent the errors, there is a reasonable probability that the jury would have had a reasonable doubt respecting guilt."
Id. at 134.
Presiding Judge Bowen outlined the ten guidelines for the application of Strickland by a reviewing court in Dill v.State, 484 So.2d 491, 495-96 (Ala.Cr.App. 1985):
 "1. A claim of ineffective assistance of counsel requiring a reversal of conviction requires proof (a) that the defendant's counsel's performance was 'deficient' by 'showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,' and (b) that this deficient performance prejudiced the defendant by 'showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' 104 [S.Ct.] at 2064.
 "2. '[T]he proper standard for attorney performance is that of reasonably effective assistance.' 104 [S.Ct.] at 2064.
 "3. 'In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.' 104 S.Ct. at 2065. The reasonableness of counsel's conduct must be judged on 'the facts of the particular case, viewed as of the time of counsel's conduct.' 104 S.Ct. at 2066.
 "4. There is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' 104 S.Ct. at 2066.
 "5. In proving ineffectiveness the defendant has the burden of proof and 'must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' 104 S.Ct. at 2066.
 "6. Even a professionally unreasonable error by counsel 'does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.' 104 S.Ct. at 2067.
 "7. The defendant must affirmatively prove that any deficiencies in counsel's performance were prejudicial except in certain cases in which prejudice is presumed, i.e., the actual or constructive denial of counsel altogether or an actual conflict of interest. 104 S.Ct. at 2067.
 "8. In carrying this burden of prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 104 S.Ct. at 2068. 'When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' 104 S.Ct. at 2069.
 "9. 'In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.' 104 S.Ct. at 2068.
 "10. These principles of review are not 'mechanical rules':
 " 'Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.' 104 S.Ct. at 2069."
The appellant has not succeeded in meeting his burden under any of the above-recited guidelines. On cross-examination, the appellant admitted that he committed the offense. "There has been no proof that the outcome of the trial would have been different but for the attorney's conduct." Johnson v. State,502 So.2d 877, 881 (Ala.Cr.App. 1987).
 IV
The appellant argues that the trial court erred by admitting into evidence a *Page 816 
transcript of his taped statement because, he says, the accuracy and reliability of the transcript were not established prior to its admission. Chief Deputy Moreland testified that he was present when the tape was made and that he subsequently had it transcribed. He further testified that he had reviewed the tape and compared it to the transcription and determined that the transcription "correctly and accurately depict[ed] and relate[ed] what was said" on the tape.
"A typewritten transcript of a recorded conversation is admissible where the officer who listened to the conversation at the time of the recording testifies that the transcript accurately reflected the conversation." Hawkins v. State,443 So.2d 1312, 1314-15 (Ala.Cr.App. 1983). See also Watkins v.State, 495 So.2d 92, 98 (Ala.Cr.App. 1986). Thus, the transcription was properly admitted into evidence.
 V
The appellant argues that the trial court erred by reopening the case to allow the jury to consider Exhibit A-1, a corrected copy of Exhibit A, the taped conversation, with deletions of the objectionable matter. The record indicates that after the jury returned with a verdict of guilty, the following transpired at trial:
 "[PROSECUTOR]: We'd like to have, while we're here at the bench, Your Honor, State's Exhibit A, the statement and we've made what is marked 'Copy.' We would like to have this marked as State's Exhibit A-1, which is a copy of the tape which has the matters deleted that were objectionable and objected to.
 (Whereupon State's Exhibit A-1 was marked for identification and received in evidence.)
 "[PROSECUTOR]: We would like to offer it by agreement as being a correct copy for the jury, but before we could get it to the jury, however, they returned with a verdict. The State has no objection to it. It was to the State's benefit to get it to them, but since they did convict, I assume it was unnecessary. I assume that's agreeable with parties. I would like to make these two tapes part of the record.
"[DEFENSE COUNSEL]: That's fine with me."
The defense counsel made no objection to State's Exhibit A-1, and, therefore, this issue was not preserved for review. SeeTurner v. State, 473 So.2d 639 (Ala.Cr.App. 1985).
Furthermore, State's Exhibit A-1 did not constitute additional evidence, cf. Jolly v. State, 405 So.2d 76
(Ala.Cr.App. 1981); nor was Exhibit A-1 considered by the jury in their determination. Cf. Ex parte Batteaste, 449 So.2d 798
(Ala. 1984), on remand, 449 So.2d 799 (Ala.Cr.App. 1984). Thus, as this exhibit was not considered by the jury in reaching their verdict, any error was harmless. Jolly v. State,405 So.2d 76 (Ala.Cr.App. 1981), citing Bryson v. State, 264 Ala. 111, 84 So.2d 785 (1955); Carlisle v. State, 371 So.2d 975
(Ala.Cr.App. 1979).
 VI
The appellant argues that the trial court erred by referring to one of the written charges as that of the defendant. However, the appellant failed to object to the trial court's reference and, further, the defense counsel stated that he was "satisfied" with the court's oral charge. Thus, this issue was not sufficiently preserved for appellate review. Richardson v.State, 456 So.2d 1152 (Ala.Cr.App. 1984); Kimbrough v. State,429 So.2d 1143 (Ala.Cr.App. 1983).
 VII
The appellant alleges that the trial court erred by receiving into evidence the Alabama Uniform Incident/Offense Report, because, he says, it constituted "patent hearsay." The incident report was admitted into evidence in order to show what particular items were reported as stolen. Chief Deputy Moreland had already testified as to these items and Bill Barrentine subsequently also testified concerning the description of the stolen property. Thus, even if the report was not properly admitted *Page 817 
under the business record exception (the State it was proper under this exception), it was "rendered prejudicially innocuous" by the other testimony to the same effect. "The rule is that testimony apparently illegal upon admission may be rendered prejudicially innocuous by subsequent or prior legal testimony to the same effect or from which the same facts can be inferred. Yelton v. State, 294 Ala. 340, 317 So.2d 331
(1974); Holm v. State, 416 So.2d 782 (Ala.Crim.App. 1982)."Bell v. State, 466 So.2d 167, 174 (Ala.Cr.App. 1985). Bill Barrentine and Chief Deputy Moreland testified concerning the stolen property, without objection from the defense counsel or the appellant. Therefore, the report's admission into evidence was rendered prejudicially innocuous.
AFFIRMED.
All the Judges concur.